**Gary BROWN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 981S253.**

Supreme Court of Indiana.

May 13, 1982.

C. Robert Rittman, Pauper Counsel, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant Gary Brown was convicted of Robbery, Ind.Code § 35–42–5–1 (Burns Repl.1979), at the conclusion of a jury trial in Grant Circuit Court on April 22, 1981.

The robbery was a Class A felony because one victim was injured during the crime. Brown was sentenced to twenty (20) years in prison and his conviction is the subject of this appeal.

Defendant raises two issues for consideration, concerning: (1) whether there was sufficient evidence to establish Brown's identity as one of the two robbers; and (2) whether there was sufficient evidence to establish the element of bodily injury.

Shortly after midnight on September 14, 1980, two men came into Bob's Tavern in Marion, Indiana, one carrying a rifle and the other a hand gun, and robbed many of the patrons in the tavern as well as taking money from the cash register of the premises. The taller of the two robbers was armed with a rifle and wore a bandanna over the lower half of his face. This person was later determined to be one Bobby Joe Triplett. The defendant, who was described as the shorter of the two, was armed with a pistol and wore a ski cap pulled down over his head and a pair of large sunglasses. The robbers ordered the patrons in the bar, some fifteen in number, to lie on the floor while they went about taking their wallets and personal possessions from them. Witness Wayne Applegate testified that he was drinking beer with friends at Bob's Tavern on that evening. He stated he was told of two suspicious looking men outside so he went outside to check on his truck. Upon opening the tavern door to leave the tavern, he was confronted by the two men, one carrying a rifle and the other a hand gun. One of the men stuck a gun in Applegate's back and ordered him inside where the man with the handgun, the shorter of the two, took his wallet. Applegate testified he was about two feet away from the shorter robber during much of the robbery and he spent the time observing the activity of him and his accomplice. Applegate later observed the defendant in a police lineup and positively identified the defendant as being the shorter robber. He further positively identified the defendant as one of the robbers in open court during the trial.

Larry Brennaman was also a patron in the bar and was one of the victims. He was lying on the floor with the other victims and after being robbed of his billfold, started to get up. The taller robber with the rifle then approached him and struck him in the head with the rifle, knocking him back to the floor. Brennaman testified that he was hit hard in the head, breaking the skin and causing it to bleed slightly. He said the blow caused pain to him and gave him a headache, and further resulted in a knot on his head about half the size of an egg. He said it did not knock him out and he did not seek medical attention from a doctor or a hospital.

## I.

Witness Applegate did not come forward immediately to inform the police that he could identify one of the robbers. The police acquired the names of the perpetrators through a tip and arrested the defendant and the accomplice a few days after the robbery. Both Brown and Triplett gave statements admitting their participation in the robbery as well as identifying the other as an accomplice. On a motion to suppress, Brown's statement was suppressed by the court and separate trials were granted to Triplett and Brown.

After this had occurred, and some six months after the robbery, Applegate came forward and told the police that he thought he could identify one of the robbers. The State then notified the defense that they had an additional witness and organized a lineup for witness Applegate to observe. The defendant was notified of this lineup and his attorney was present. The defendant admits the lineup was conducted properly. He says there was no misconduct by the prosecutor or the police. There was no suggestive conduct by the police nor any wrongdoing or improper procedure by those conducting the lineup. Those in the lineup were all of the same race, age, and general characteristics and the defendant admits this. Applegate positively identified defendant Brown in the lineup as the shorter of the two robbers. He later identified the

defendant in open court during the trial as one of the perpetrators of the robbery.

Defendant's argument seems to be that the appearance of Applegate at a time when the prosecution's statement of defendant had been suppressed, leaving them with no one to identify defendant, was so fortuitous of the State's case, that it raises a strong suspicion of a taint and therefore makes the testimony incredible. We cannot agree with defendant's analysis here. Defendant's argument on this issue attacks the credibility of the testimony which identified him as one of the perpetrators of this crime, but the credibility of the witness who gave this testimony is to be determined by the jury. *Sloan v. State,* (1980) Ind., 408 N.E.2d 1264, 1265; *Hill v. State,* (1979) Ind., 394 N.E.2d 132, 135. It is true we will closely scrutinize testimony that is inherently unbelievable or incredible by its very nature. *Wallace v. State,* (1981) Ind., 426 N.E.2d 34, 42. The testimony of Applegate is not so inherently unbelievable that this Court is justified in closely examining it. Applegate told the police the night of the robbery that he thought he could identify one of the robbers but it was never pursued by the police. There is no explanation why Applegate was not sought sooner to identify the defendant but this is merely a condition of his appearance and does not in any way cast suspicion on it in view of the facts which are not in conflict. Defendant's attorney was present at the lineup and was aware that Applegate was not coached in any manner to make a selection of defendant as the perpetrator of the robbery. The lineup was, in all ways, done properly and Applegate conducted himself properly during the course of it. Applegate testified before the jury as to his encounter with the shorter of the two robbers and his identification of Brown as that person. The jury had sufficient evidence presented to it by the testimony of Applegate and, in fact, did accept that testimony and believe it to the extent that they found defendant guilty. The jury, therefore, had sufficient evidence to reasonably find that the defendant did commit the robbery. *Sloan, supra; Hill,*

*supra.* It is also well settled that a robbery conviction may be sustained on the uncorroborated testimony of one witness. *Sheckles v. State,* (1980) Ind., 400 N.E.2d 121, 122; *Williams v. State,* (1978) 267 Ind. 700, 701, 373 N.E.2d 142, 143.

## II.

 Indiana Code § 35–42–5–1 provides that robbery shall be a Class A felony if it results in either bodily injury or serious bodily injury to any other person. Since the person injured in this case, Mr. Brennaman, was a victim of the robbery, only bodily injury need be shown. Our inquiry in this issue becomes, considering the evidence most favorable to the State and all reasonable inferences drawn therefrom, whether the jury could reasonably have found the existence of the element of bodily injury. *Bailey v. State,* (1980) Ind., 412 N.E.2d 56, 59. The degree of injury is a question of fact for the jury. *Padgett v. State,* (1978) Ind.App., 380 N.E.2d 96, 98.

Ind.Code § 35–41–1–2 (Burns Repl. 1979) defines bodily injury as "any impairment of physical condition, including physical pain." Brennaman testified that the blow caused him pain, that it broke the skin, caused bleeding, and gave him a headache and left him with a knot on his head half the size of an egg. This is sufficient injury for the jury to find that it constituted bodily injury as defined in the statute. A similar situation was faced by this Court in *Rogers v. State,* (1979) Ind., 396 N.E.2d 348, where there the victim of the robbery was knocked down and kicked by the robber. Justice Hunter, speaking for the Court, observed:

> "Here we do not have a mere broken fingernail but bruised ribs and a bruised and swollen face, which injuries were suffered as a result of defendant kicking the victim. Defendant doesn't mention the added humiliation of absorbing a beating while being robbed or the increased depravity of a criminal exhibited by such conduct. These are factors which the

legislature likely had in mind when setting the sentence for this crime."
*Id.,* 396 N.E.2d at 351.

The same can be said in this case where a victim forced to lie on the floor while being robbed is struck in the head by a rifle butt when he raises his head to object. *See also Charlton v. State,* (1980) Ind., 408 N.E.2d 1248, 1250; *Hanic v. State,* (1980) Ind.App., 406 N.E.2d 335, 338. There was sufficient evidence from which the jury could reasonably find that defendant committed bodily injury upon the body of Brennaman during the robbery pursuant to the definition of a Class A felony in the statute.

The judgment of the trial court is in all things affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.