**Jerry OUTLAW, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 983S321.

Supreme Court of Indiana.

Oct. 25, 1985.

Susan K. Carpenter, Public Defender, Jo Ann Farnsworth, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Pursuant to Ind. Rules of Procedure, Post Conviction Rule 2 § 2, Defendant (Appellant) belatedly appeals his conviction of robbery a class A felony, Ind. Code § 35–42–5–1 (Burns Code Ed.1978 Supp.). He was convicted by a jury, and the trial court sentenced him to twenty (20) years imprisonment.

Defendant challenges the sufficiency of the evidence supporting his convictions on three grounds:

1. He asserts that the victim's identification of him at trial was defective, claiming an unduly suggestive pre-trial photographic array and the absence of an independent basis for the identification.

2. He argues that the crime did not result in "bodily injury" as required by Ind.Code § 35–42–5–1 and defined by Ind. Code § 35–41–1–2 (Burns Code Ed.1978 Supp.)

3. Defendant also contends that the trial court erroneously instructed the jury on lesser included offenses.

We affirm.

The evidence favorable to the trial court's judgment reveals the following:

At approximately 7:30 p.m. on November 11, 1977, the victim, Rena Engle, had parked her car in the parking lot of a restaurant in Fort Wayne, Indiana, had walked across the parking lot toward the front door of the restaurant and was standing on the sidewalk, when she heard a person running. As the sound became louder, Engle looked over her shoulder and saw a man, who was subsequently identified as the Defendant, running toward her. Engle began to run toward the restaurant door as the Defendant grabbed the strap of her shoulder purse. The resulting force spun her around and she fell onto her knees. The victim grabbed a partition and held onto her purse. Still attempting to retain possession of her purse, Engle released the partition and held the purse with both hands. Defendant continued to pull on the purse and, by doing so, dragged the victim along the sidewalk on her knees. Eventually, after further resistance and a demand from Defendant that she release the purse, Engle became more concerned for her safety than for the purse and released it. Defendant then fled the scene on foot.

Engle was injured during the robbery. Her knees were scraped and they bled. She had bruises on her legs, back and arms that were painful and sensitive to touch. The right arm was strained and she was unable to use it on the day after the robbery.

When police arrived at the scene Engle described her assailant as a black male, between five feet eight inches and five feet eleven inches tall with a "baby face." She also stated that he appeared to be in his early twenties and that he was wearing a beige leather jacket, dark pants and a brown knit hat with a folded bill. Subsequently, the Defendant was discovered to be five feet eight inches tall, to weigh 135 pounds and to be nineteen years old. The victim also gave the police a list of her possessions that were in the stolen purse. A "Bank Americard" was included among her missing possessions.

On February 3, 1978, the Fort Wayne police arrested Andrew Lee Craig on charges unrelated to this case. Craig had the victim's credit card in his possession, and he had made nine purchases with it. Craig told the police that he had gotten the card from his friend, the Defendant. At trial, Craig testified for the State.

As a result of Craig's arrest, the victim was shown a photographic array sometime after February 3, 1978. This display consisted of eight photographs. She did not make an identification, but she did select two photographs to complete another general description of her assailant. On February 6, 1978, the victim was shown a second array that consisted of seven photographs, including one of Defendant. Four pictures from the original display were also in the second display. The police told her that they had a suspect and that this suspect might be in the array. She identified the third picture as depicting her assailant, the Defendant. The police advised her to view all the photographs and she did so.

The photographs in the second display consist of seven pictures of black males with relatively short hair of various styles. Some of the men are clean shaven and some have facial hair. All are shown in both frontal and profile views. The men appear to be of relatively similar ages.

Their heights cannot be determined from the pictures. The Defendant's photograph varies slightly from the other photographs. His picture presents a frontal view and both profiles simultaneously because it was taken with the use of a mirror. Also the Defendant was depicted from the waist up; whereas the other photographs show the subjects from the mid-chest area.

### ISSUE I

■ Defendant addresses alleged irregularities in the pre-trial photographic array at great length and in great detail. However, these issues are not properly before us. He did not challenge the array or the independent basis for the victim's identification either by a motion prior to trial or by objection during trial. These issues were initially raised in his motion to correct errors. Because of the Defendant's failure to properly raise the issues at trial, he may not raise them on appeal. *Wilson v. State* (1984), 465 N.E.2d 717, 720.

■ In any event, the issues are meritless. Our examination of the photographic array and the presentation of it has not revealed any undue suggestiveness. We have not found the disparities claimed by Defendant in age, build and height of the subjects photographed to be present. The police officer's statement to the victim, that the suspect's photograph might be in the array, did not draw undue attention to the Defendant. Given the totality of the circumstances surrounding the array, we find no error. *Little v. State* (1985), Ind. 475 N.E.2d 677, 681–683.

### ISSUE II

The Defendant argues that there was insufficient evidence to support his conviction because Engle did not suffer "bodily injury" as the term was defined by the robbery statute that was in effect when the charged offenses occurred. Defendant contends that Engle's injuries were minor and that her injuries were not the natural and probable consequence of his actions, but instead that they were caused by the victim's resistance.

Ind. Code § 35–42–5–1 defined robbery as follows:

"A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear; commits robbery, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon, and a class A felony if it results in either *bodily injury* or serious bodily injury to any other person. (Emphasis added.)

In turn, "bodily injury" was defined in Ind.Code § 35–41–1–2.

" 'Bodily injury' means any impairment of physical condition, including physical pain."

■ Clearly, Engle suffered physical pain and some physical impairment due to the robbery. She testified that her bruises were sensitive to touch and that they could not be covered by a sheet without pain. She suffered strained muscles and could not use her arm the next day after the robbery. Bodily injury to Engle, as that term is defined by the statute, resulted from the robbery charged. *Brown v. State* (1982), Ind., 435 N.E.2d 7. The degree of injury is a question of fact for the jury. *Id.* We do not reweigh evidence and redetermine a jury's factual conclusions.

■ The causation issue was addressed by this Court in *Moon v. State* (1981), Ind., 419 N.E.2d 740. We said:

"The responsibility for any bodily injury which occurs during the commission or attempted commission of a robbery rests on the perpetrators of the crime, regardless of who inflicts the injury, so long as it is a *natural and probable consequence* of the events and circumstances surrounding the robbery or attempt.

\* \* \* \* \* \*

"The statutory attribution of responsibility for any bodily injury which flows

from a robbery or attempted robbery no doubt reflects the legislature's recognition that *regardless of the perpetrator's design,* the crime of robbery has inherent potential for violence. *Victims may resist,* police or bystanders may intercede. *Neither these responses nor the concomitant likelihood that some bodily injury will occur can be regarded as unnatural or improbable consequences of the perpetrator's conduct.* (Emphasis added.)

419 N.E.2d at 741–742.

In light of *Moon,* Defendant bears the responsibility for Engle's injuries.

### ISSUE III

Defendant tendered an instruction that included several alleged lesser offenses included in robbery. The trial court modified the instruction and gave it in a form that addressed robbery as a class A felony and as a class C felony. By modifying the tendered instruction, the trial court refused to instruct the jury on: theft, a class D felony; criminal conversion, a class A misdemeanor; and battery as a class A and as a class B misdemeanor.

Defendant contends that theft, criminal conversion and battery are necessarily included offenses of robbery as a class A felony. He also claims that the jury was deprived of the right to determine whether the lesser offense of robbery without bodily injury, a class C felony, had occurred.

In determining whether to instruct the jury that they may return verdicts on lesser-included offenses, the trial court must apply a two-part test. First, by examining the statutes defining greater and lesser-included offenses and the charging instrument, the court determines whether the lesser offenses sought to be included are inherently included in the greater charge, or are "factually" included under the charging instrument. Second, the court must make a determination of whether, assuming that an offense was committed, the evidence would, *prima facie,* warrant a conviction for a lesser-included offense, or could only warrant a conviction

for the principal charge, in which latter case the lesser-included offense instructions should not be given. *See, Jones v. State* (1982), Ind., 438 N.E.2d 972, 974–76.

In the case at bar, we focus on step two of the analysis described in *Jones v. State.* The evidence warrants a conviction of robbery as a class A felony and it could have supported a conviction of robbery as a class C felony. However, if the jury had not accepted the evidence of robbery, it could not properly have convicted Defendant of theft, battery or conversion. Given the evidence, the Defendant either committed robbery or no offense whatsoever.

Defendant's assertion that the trial court, by refusing his tendered instruction precluded a consideration of whether or not a bodily injury had occurred—hence eliminated robbery as a class C felony as a possible verdict—is incorrect. Defendant's tendered instruction, as revised by the court, did permit a finding of guilty upon the class C charge included.

We find no error. The judgment of the trial court is affirmed.

GIVAN, C.J., and PIVARNIK and SHEPARD, JJ., concur.

DeBRULER, J., concurs in result.