Beverly J. BOLIN, Appellant,

v.

STATE of Indiana, Appellee.

No. 87S00–8710–CR–978.

Supreme Court of Indiana.

Oct. 19, 1989.

Rehearing Denied Dec. 19, 1989.

John K. Wissner, Scales, Wissner and Krantz, Boonville, Ind., for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, Ind., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which she received a sentence of forty (40) years.

The facts are: On December 20, 1986, Warrick County Deputy Sheriff Robert L. Irvin found the body of Bruce Bolin, the victim in this case, submerged in a creek under a bridge. The body had been weighted down around the waist with a chain attached to a cement block. Examination of the body disclosed the victim had died of a bullet wound to the chest. The

victim's wife, the appellant in this case, was arrested and charged with the murder.

Starting about December 10, 1986 appellant had entered into a series of conversations with her friend Jeffrey Scott Kempf, which eventually led to a meeting in a hotel room on the night of December 16. During this meeting, she disclosed to Kempf that she had killed her husband and submerged his body in a creek under a bridge. She told Kempf that they had previously had disagreements but that they had made up and were "just fine" when the victim was shot. She told Kempf she was revealing this information to him because she wanted him to help her move the body because it was becoming visible in the creek.

The next morning, December 17, 1986, Kempf went to the police and advised them as to what appellant had told him. The police then began a search of the various creeks in the county at their intersections with bridges. This search resulted in the discovery of the victim's body.

Dissolution proceedings had been started between appellant and her husband and appellant had filed a petition for a temporary restraining order on November 3, 1986. A temporary order was issued on that date and a hearing was set for November 13 for the restraining order. However, apparently the victim was not found at the address listed on that order and a new order was issued on December 4, setting a hearing for December 17, which order contained a new address for the victim. It was established that the victim had actually died on December 2, although, as above stated, his body was not discovered until December 20.

A search of appellant's home disclosed that a bullet had been fired into the wall but an attempt had been made to disguise the bullet hole by placing a molly bolt in the hole and attaching a hook thereto. When police removed the hook and the molly bolt, they recovered a .38 caliber bullet. Appellant had told Kempf that she thought the bullet was in the wall. Appellant had told numerous other persons that the victim had disappeared on December 2. When she was arrested, she claimed to

know nothing of her husband's disappearance.

However, in addition to her statements to Kempf, she told Patsy Holt, a fellow inmate in the Warrick County Jail, that "she had planned the whole thing," meaning the murder of the victim. She also told Holt that she would not say anything to her attorney or anyone else and that she would fool them all when she went to court.

Neighbors testified that on December 1 and December 2 they observed the victim apparently trying to enter appellant's home—pounding on the door, shouting obscenities, and threatening to kill appellant. At trial, appellant's counsel proceeded on the theory of self-defense, using the testimony of Kempf that appellant told him she shot the victim because it was either her or him, and further, using the testimony of neighbors concerning the victim's conduct at appellant's home on the night before he was killed and on the night he was killed.

Although appellant's front door showed signs of a breaking and her statements to Kempf lead to the conclusion that the victim was killed inside appellant's home, there is no direct evidence to that effect in this record. Such a conclusion must be made from the circumstantial evidence.

■ Appellant claims the trial court erred in allowing five of the State's witnesses to testify concerning statements allegedly made by the victim concerning prior acts of the defendant. According to these witnesses, the victim had on several occasions made statements to the effect that appellant might shoot him, that she had pursued him on prior occasions and possibly had fired a shot at him. These actions presumably took place several months prior to the victim's death. Some occurred even before they had married.

In the case at bar, appellant was presenting a theory of self-defense. In such a situation, a deceased victim's statements as to threats by the defendant are relevant to "prove state of mind" and thus are admissible. *Drummond v. State* (1984), Ind., 467 N.E.2d 742, 747; *Romine v. State* (1983), Ind., 455 N.E.2d 911, 915. We see no error

in the admission of this evidence under the circumstances.

■ Appellant claims the State did not meet its burden of negating appellant's claim of self-defense. It is true that when one looks only at a portion of the evidence in this case the claim of self-defense appears to be viable. Appellant was divorcing her husband because of prior acts of violence against her person, she had requested a restraining order against him, and on the evening prior to his death, he had been at her home demanding entry in a loud and threatening manner, which he repeated on the night of his death. Although there is no direct evidence that he in fact did enter the house at that time, there certainly is strong circumstantial evidence that he did and that he in fact met his death in the home. Certainly if these were all of the facts in the case, a claim of self-defense would be viable.

However, additional facts were presented for the jury's consideration. Appellant disposed of the victim's body by fastening a chain around his waist, tying it to a cement block, and throwing him into a stream. The only explanation of this conduct consistent with a theory of self-defense was that appellant panicked. However, the jury heard the additional testimony of Patsy Holt that appellant told her she had planned the whole thing, was not going to tell her attorney, and was going to fool them all when she went to court.

Appellant has cited the case of *Cobbs v. State* (1988), Ind., 528 N.E.2d 62 in which this Court ordered the discharge of the appellant on the ground that the State had failed to negate his claim of self-defense. However, in that case, we had Cobbs' detailed explanation of how the shootings occurred which in no way was contradicted or explained away by the State.

In the case at bar, however, there is a conflict as to appellant's theory of self-defense. Although there is strong evidence that such might have been the case, there also is evidence from which the jury logically could conclude that appellant deliberately planned the murder of her husband and the disposition of his body. They were not bound to accept appellant's theory that she shot him in self-defense but panicked. They also were entitled to believe the testimony of Holt. In *Cobbs,* there was no evidence to contradict the theory of self-defense. In this case, the contradictory evidence was for the jury to weigh and this Court will not second-guess the jury in that responsibility. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

Appellant contends the trial court erred in refusing her tendered instruction on circumstantial evidence. However, an examination of the instructions given by the trial court reveal that Instructions Nos. 6, 8, and 12 all address the subject of circumstantial evidence. We see nothing contained in appellant's Tendered Instruction No. 1 which was not adequately covered by the court's instructions. We therefore hold it was not error for the court to refuse appellant's Tendered Instruction No. 1. *Smith v. State* (1984), Ind., 468 N.E.2d 512; *Richey v. State* (1981), Ind., 426 N.E.2d 389.

Appellant claims the trial court erred in refusing her Tendered Instruction No. 12 on the lesser-included offense of reckless homicide and her Tendered Instruction No. 13 on criminal recklessness. This Court has held that where the theory of the case dictates that if any crime was committed, it was the one charged, the court is not required to instruct on lesser offenses. *Outlaw v. State* (1985), Ind., 484 N.E.2d 10.

■ In order to obtain an instruction on a lesser offense, it is not enough to show that the lesser offense is included in the charged offense, but there also must be evidence from which the jury properly could find that the lesser offense was committed while the greater was not. *Henning v. State* (1985), Ind., 477 N.E.2d 547.

■ In the case at bar, appellant made no attempt during the trial to present any theory of reckless homicide or criminal recklessness. Her sole defense was that of self-defense. Thus the case was presented to the jury on the theory that the defendant in fact did shoot her husband intentionally but that she did so defending against his breaking into her home and assaulting her. There was nothing in the

evidence in this case to justify the court's giving of the instructions on reckless homicide or criminal recklessness.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.