John M. GILREATH, Appellant–Defendant Below,

v.

STATE of Indiana, Appellee–Plaintiff Below.

No. 02A03–9012–CR–00554.

Court of Appeals of Indiana, Third District.

Sept. 18, 1991.

Frank J. Gray, Travis S. Friend, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Judge.

John Gilreath appeals his convictions of murder [1], two counts of attempted murder [2] and criminal recklessness.[3] He presents eight issues for our review:

 I. Whether the doctrine of transferred intent has been abolished in Indiana?

 II. Whether the trial court erred in giving State's tendered instruction No. 3?

 III. Whether the trial court erred in refusing to instruct the jury on lesser included offenses?

 IV. Whether the trial court erroneously excluded evidence concerning the alleged sexual molestation of Gilreath's niece by one of the victims?

 V. Whether the trial court erred in denying Gilreath's Motion to Suppress?

 VI. Whether the trial court erred in admitting various statements and exhibits over Gilreath's objections?

 VII. Whether the trial court erred in denying Gilreath's Motion for Directed Verdict?

 VIII. Whether the trial court erred in imposing consecutive sentences upon Gilreath without specifically identifying aggravating circumstances?

We affirm.

On November 23, 1989, John Gilreath went to the Fort Wayne home of his brother Doug Gilreath for Thanksgiving dinner. After the Gilreath family discussed their suspicions that Doug's four year old daughter A.G. had been sexually molested by her step-father Jack Emerick, John Gilreath set out to kill Emerick.

Gilreath drove to the home of John and Janet Treace, Emerick's in-laws, after making a telephone call to determine if Emerick was there. The occupants of the Treace residence (John, Janet, Chuck, Susan, Kelly and C.J. Treace, Alice, Jarrod and Jack Emerick and Tim Squier) were engaged in various activities when sounds were heard outside the house.

Tim, Chuck, Kelly and Alice went outside to investigate while John turned on a back porch light. Gilreath saw a figure headed toward him and began shooting. Approxi-

1. IND.CODE 35–42–1–1

2. IND.CODE 35–41–5–1; IND.CODE 35–42–1–1

3. IND.CODE 35–42–2–2

mately 15 rifle shots were fired. Kelly sustained a fatal chest wound. Tim's hands and side were wounded. Gilreath fired through a kitchen window, striking Jack in the side and causing bullet fragments to lodge in the leg of C.J., an 18 month old boy.

Gilreath fled to Michigan after abandoning his rifle and vehicle at an interstate rest stop. He then placed a 9–1–1 call and indicated to the dispatcher that he had killed and wounded people in Fort Wayne, Indiana.

## I.

### *Transferred Intent*

 Gilreath argues that the doctrine of transferred intent was abolished by the enactment of IND.CODE 35–41–2–2 and that its use in his trial amounted to fundamental error.[4]

Fundamental error is error that not corrected would deny the defendant due process. *Ward v. State* (1988), Ind., 519 N.E.2d 561, 562.

Gilreath acknowledges that the Indiana Supreme Court has thrice applied the doctrine of transferred intent since the 1977 enactment of the current culpability statute. *Cheney v. State* (1985), Ind., 486 N.E.2d 508; *Tucker v. State* (1983), Ind., 443 N.E.2d 840, *reh. denied; Norris v. State* (1981), Ind., 419 N.E.2d 129. However, he attempts to distinguish these cases by arguing that they each involve a mistaken victim situation while the instant case involves an unintended victim.

In *Tucker, supra,* the court considered an appellant's claim that he did not "intend" to injure the actual victim: "The fact that he did not strike his intended victim but instead injured another is not a defense. We have found in similar cases that

the defendant's intent is transferred from the person against whom it was directed to the person actually injured." *Tucker, supra,* at 842.

The *Norris* court clearly did not limit the doctrine of transferred intent to the particular situation of mistaken identity of the victim, but stated: "Under the doctrine of transferred intent, the essential element is present if the accused intended to kill someone." *Norris, supra,* at 133, citing *Taylor v. State* (1973) 260 Ind. 264, 279–80, 295 N.E.2d 600, 609, *cert. denied,* (1973) 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250.

We therefore reject Gilreath's contention that the application of the doctrine of transferred intent in his case was fundamental error.

## II.

### *State's Tendered Final Instruction No. 3*

 At Gilreath's trial, the jury was instructed as follows: "The defendant is presumed to intend the natural and probable consequences of his actions." Record, p. 137. Gilreath contends that this instruction shifted the burden of proof on the element of intent from the State to him and that its use amounted to fundamental error.

The Due Process Clause of the Fourteenth Amendment requires the State to bear the burden of proving beyond a reasonable doubt each element of a charged crime. The State may not relieve itself of this burden through the use of instructions which mandate a presumption of intent if the State proves predicate facts. *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344; *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39.

---

**4.** I.C. 35–41–2–2 provides: "Culpability.—(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so.

(c) A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious,

and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

(d) Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct."

Our supreme court has stated that the use of an instruction violative of *Sandstrom, supra,* generally constitutes fundamental error. *Reid v. State* (1988), Ind., 529 N.E.2d 1309. However, even constitutional error may be harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Accord: *Reid, supra,* at 1309.

In accordance with *Chapman, supra,* we have considered the entire record to determine whether the erroneous instruction on intent given at Gilreath's trial contributed to his conviction. The record discloses overwhelming evidence of Gilreath's specific intent to kill. Armed with a rifle and ammunition, Gilreath proceeded to a residence where he knew Jack Emerick to be. Gilreath repeatedly fired his rifle outside and into the Treace residence. After fleeing Indiana and taking steps to dispose of incriminating evidence, Gilreath placed a 9-1-1 call and indicated that he had committed murder. Gilreath subsequently made various statements disclosing that he sought to kill Jack Emerick because of Emerick's alleged abuse of Gilreath's niece.

We conclude that the erroneous burden-shifting instruction given at Gilreath's trial was harmless error beyond a reasonable doubt.

### III.

*Instruction on Lesser-included Offenses*

Gilreath claims the trial court erred in refusing his tendered instructions on the offenses of voluntary manslaughter, attempted voluntary manslaughter, involuntary manslaughter and reckless homicide.

■ To obtain an instruction on a lesser offense, it is not enough to show that a lesser offense is included in the charged offense. There must also be evidence from which the jury could properly find that a lesser offense was committed while the greater was not. *Bolin v. State* (1989), Ind., 544 N.E.2d 1372, 1374, *reh. denied.*

■ The existence of sudden heat reduces what would otherwise be murder to voluntary manslaughter. IND.CODE 35-42-1-3. Sufficient provocation must exist to elicit an emotion such as anger, rage, sudden resentment or terror which would obscure the reason of an ordinary person, prevent deliberation and premeditation, and render a defendant incapable of cool reflection. *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1077.

Here, the evidence discloses no sudden provocation overcoming Gilreath's reason and rendering him incapable of deliberation. Defense witnesses Dawn and Doug Gilreath each testified that information concerning Emerick's alleged sexual abuse of A.G. was first conveyed to Gilreath in January 1989. Record, pp. 1327, 1360. Ten months later, Gilreath armed himself with a rifle and set out in pursuit of Emerick. He stopped on the way to the Treace residence to make a telephone call to ascertain whether Emerick was there. After arriving at the Treace residence, Gilreath circled the house in an attempt to locate Emerick. He fired numerous shots at persons who came outside the house, then proceeded to the back of the house. Upon spotting Emerick through a kitchen window, Gilreath fired additional shots. The evidence is not susceptible of an inference that Gilreath was rendered incapable of cool reflection and deliberation.

■ Involuntary manslaughter contemplates an incidental killing that occurs during the commission of: a class C or D felony that inherently poses a risk of serious bodily injury, a class A misdemeanor that inherently poses a risk of serious bodily injury, or battery. IND.CODE 35-42-1-4. Evidence adduced at Gilreath's trial disclosed that Kelly was killed as Gilreath attempted to kill Emerick. Attempted murder is a class A felony. I.C. 35-41-5-1. The record does not support the use of an involuntary manslaughter instruction.

■ Reckless homicide is a killing committed with a plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. An instruction on reckless homicide is warranted only if there is a serious evi-

dentiary dispute as to whether a defendant committed an attack recklessly but not knowingly. *Ingram v. State* (1989), Ind., 547 N.E.2d 823. The record herein discloses no such evidentiary dispute.

The trial court properly refused Gilreath's tendered instructions on lesser included offenses.

## IV.

### Exclusion of Molestation Evidence

■ The State filed a Motion in Limine seeking to exclude evidence concerning the alleged molestation of A.G. Following a hearing, the Motion in Limine was granted in part and denied in part. The trial court permitted testimony relative to Gilreath's state of mind, but excluded testimony from persons who had investigated the allegations of sexual abuse but had not communicated their findings to Gilreath. Record, pp. 468–69.

At trial, Gilreath made offers of proof including a report from a social worker who interviewed A.G., the results of a police investigation of suspected abuse and statements concerning an alleged threat from Emerick to kidnap A.G. Gilreath argues that such evidence was corroborative of his assertion that he acted in sudden heat and was properly admissible as its probative value outweighed its prejudicial impact.

The trial court has broad discretion in ruling on the admissibility of evidence and in determining its relevancy. We will disturb its ruling only upon a showing of abuse of that discretion. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068, 1073, *reh. denied.*

Gilreath was permitted to attempt to establish the existence of sudden heat through the introduction of evidence as to his state of mind. Dawn Gilreath, Doug Gilreath and Diana Gilreath testified that allegations of Emerick's abuse of A.G. were conveyed to Gilreath on multiple occasions. Diana Gilreath additionally testified that Gilreath enjoyed a close relationship with A.G. and was distressed by the allegations of abuse.

However, evidence offered to establish that sexual abuse of A.G. *actually* took place was not relevant to an issue at Gilreath's trial. The trial court properly observed that Emerick was not on trial. Record, p. 468. The trial court did not abuse its discretion in not admitting the evidence presented in Gilreath's offer to prove.

## V.

### Motion to Suppress

Prior to trial, Gilreath moved to suppress evidence of statements he had made, together with physical evidence recovered as a result of those statements. At a hearing held on August 13, 1990, the trial court suppressed the second of Gilreath's videotaped statements, but denied the remainder of the Motion to Suppress.[5]

Gilreath claims that he should have been advised of his Constitutional rights as soon as he indicated to a 9-1-1 dispatcher that he had committed murder. He claims that statements made to dispatcher Boucher during his 9-1-1 call, statements to Officer Feneley during transport and statements to Deputy Hinkel while being processed at the Oakland County Jail were inadmissible as he had not been "Mirandized." He further claims that his statements to Detectives Tutwiler and Stevens, made after an advice of rights, were involuntary in that his mental will was overborne by coercive police action.

■ Evidence produced at the hearing on Gilreath's motion to suppress disclosed that he initiated a call to a civilian 9-1-1 emergency operator and made incriminating statements. As police officers who responded to Gilreath's request to be taken into custody were transporting him to the Oakland County Jail, Gilreath made further incriminating statements. Additionally, while Gilreath was being fingerprinted, he indicated to the processing deputy that he

---

5. Evidence adduced at the hearing on Gilreath's motion to suppress disclosed that Gilreath requested an attorney prior to the recording of his second videotaped statement.

had shot people. None of the statements to officers were in response to a question directed to Gilreath.

Unsolicited statements made by a suspect who is not undergoing custodial interrogation are not subject to the requirements of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. *See Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1092, *reh. denied; Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1335. Gilreath's spontaneous statements were properly admitted into evidence.

■■■ Gilreath's videotaped statement was made during custodial interrogation. Therefore, its admission is governed by the requirements of due process. The State bears the burden of proving the voluntariness of the confession. Upon review of the trial court's ruling on the voluntariness of a defendant's statements we will consider only that evidence which supports the ruling and any unrefuted evidence in the defendant's favor. *Burdine v. State, supra,* at 1092.

At the hearing on his motion to suppress, Gilreath testified that Officers Stevens and Tutwiler made no threats or promises to him. Record, pp. 438–39. He acknowledged signing an Advice of Rights and Waiver of Rights form. Gilreath offered unrefuted testimony that he had not slept during the evening preceding the videotaped interview. However, he was sufficiently lucid during the videotaped interview to draw a diagram at the request of the interviewing officers. The diagram details the location of Gilreath, his vehicle and the Treace residence on the evening of November 23, 1989. Record, p. 1196.

The evidence supports the trial court's determination that Gilreath's statements were voluntary.

## VI.

### *Admissibility of Photographic Evidence*

■■■ Gilreath contends that the trial court erred in admitting photographs of the victim, a photograph in which Gilreath appears in prison attire, a photograph of Gilreath's vehicle in which shotgun shells

were visible and a videotape which included a view of the victim. He argues that the probative value of these exhibits is less than their prejudicial effect on the jury.

Admission of photographic evidence at trial is within a trial court's discretion, whose ruling will not be disturbed except for an abuse of that discretion. A jury may learn through viewing an exhibit what they might have learned through testimony describing it. *Perigo v. State* (1989), Ind., 541 N.E.2d 936, 939–940. Evidence is relevant and admissible if it tends to prove or disprove a material fact or sheds any light on the guilt or innocence of the accused. *Cox v. State* (1985), Ind., 475 N.E.2d 664, 672.

The photographs and videotape of the victim tended to prove that a fatal shooting took place. The photograph of Gilreath's vehicle was corroborative of his statements to police officers that he abandoned a vehicle after the shooting and that he made efforts to destroy identification numbers connecting him to the vehicle. The photograph of Gilreath in prison attire was offered to illustrate his physical condition at the time of his custodial interrogation.

We find no abuse of discretion in the trial court's admission of photographic evidence.

## VII.

### *Motion for Directed Verdict*

■■■ Gilreath contends that the trial court erred in denying his motion for a directed verdict at the conclusion of the evidence. He claims that there was a total absence of evidence as to his intent to kill Kelly.

A trial court can grant a defendant's motion for a directed verdict only where there is a total absence of evidence on some essential issue or where the evidence is without conflict and leads only to an inference favorable to the defendant. *State v. Goodrich* (1987), Ind., 504 N.E.2d 1023, 1024.

Under the doctrine of transferred intent, the State need not produce evidence that the accused intended to kill the actual victim; the element of intent is satisfied if a defendant intended to kill someone. *Nor-*

*ris, supra,* at 133. In the instant case, the State produced evidence that Gilreath intended to kill Jack Emerick.

The trial court properly denied Gilreath's motion for a directed verdict.

## VIII.

### *Sentencing*

 The trial court imposed minimum sentences for each of Gilreath's convictions, then ordered that the sentences be served consecutively:

"... I'm going to order those terms to be served consecutively because I think that consideration of each of the victims and of the community at large requires that. I struggled for a long time with that. In fact I gave some consideration of doing otherwise, but I believe that the community and the victims and respect for the community and respect for the victims demand that each of these sentences be separate so that each one is spoke to, not anyone is lost in the other and that in the words of the statute, to do otherwise, to run these sentences concurrently I feel would be to depreciate those that are run concurrently with anything else, so I feel compelled therefore to run these sentences consecutively."

Record, pp. 231–32.

Gilreath correctly claims that the foregoing comments by the trial court do not include findings concerning aggravating circumstances. A trial court must make a specific and individualized statement of the reasons supporting deviation from the standard sentence. When this has not been done, we remand with instructions to enter specific findings, if any, to support consecutive sentences or to impose concurrent sentences. *Ballenger v. State* (1991), Ind., 565 N.E.2d 751.

We remand to the trial court with instructions to enter specific findings. The judgment is otherwise affirmed.

HOFFMAN and ROBERTSON, JJ., concur.