95 F.3d 1154
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John M. GILREATH, Petitioner-Appellant,
v.
Craig HANKS, Respondent-Appellee.
 No. 95-1972.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 8, 1996.*
Decided Aug. 9, 1996.
 
 Before POSNER, Chief Judge, and ROVNER and EVANS, Circuit Judges.
 
 ORDER
 
 1
 John M. Gilreath appeals the denial of his petition for habeas corpus. 28 U.S.C. § 2254.[1] We briefly summarize the facts of the case as enunciated by the Indiana Court of Appeals in Gilreath v. State, 577 N.E.2d 997 (Ind.App.1991). Gilreath learned that his four-year-old niece, A.G., had been molested by her stepfather, Jack Emerick. Gilreath, determined to kill Emerick, went to the home of John and Janet Treace, Emerick's in-laws, after finding out that Emerick was there. This was located in Fort Wayne, Indiana. Gilreath was armed with a rifle. Some members of the Treace household heard sounds and went outside to investigate. Gilreath, seeing a figure heading toward him, began shooting. He fired approximately 15 shots. Kelly Treace sustained a fatal chest wound. Tim Squier sustained injury to his hands and side. Jack Emerick, Gilreath's intended target, sustained an injury to his side when a bullet went through a window and into the house. C.J. Treace, a four-year-old boy, sustained injuries when bullet fragments from the shot that hit Emerick lodged in his leg. Gilreath fled to Michigan, called 9-1-1, and told the dispatcher about his actions. The parties do not dispute this account of the events.
 
 
 2
 Gilreath was convicted of the murder of Kelly Treace (for which he received a 30-year sentence), for the attempted murder of Tim Squier (for which he received a 20-year sentence), for the attempted murder of Jack A. Emerick (for which he received a 20-year sentence), and for criminal recklessness (for which he received a six-month sentence). The sentences were imposed consecutively. Therefore, Gilreath is currently serving a total of 70 years and six months for his actions.
 
 
 3
 Gilreath claims that there were six errors of constitutional proportion in his state court trial. First, he argues that the prosecution's case rested upon the theory of transferred intent (that he attempted to kill one person and killed another and is therefore responsible for the intentional homicide of the person he did kill), which has been abolished in Indiana and that therefore he was denied due process. Second, he claims that he was denied due process because the trial court instructed the jury that a defendant is presumed to intend the natural and probable consequences of his actions. Third, he claims he was denied due process when the trial judge refused to instruct the jury on the offense of voluntary manslaughter. Fourth, he claims that his due process rights were violated when the trial judge refused to allow him to present evidence that his niece had been molested. Fifth, he claims that the trial court allowed to be admitted into evidence statements he made to police officers that he argues should have been suppressed. Sixth, he claims he was denied due process because the trial court allowed the prosecution to introduce prejudicial evidence at trial.
 
 
 4
 Issue one involves the intersection of state law and constitutional rights. A state has broad discretion to determine the elements of a crime. Eaglin v. Welborn, 57 F.3d 496, 500 (7th Cir.), cert. denied, 116 S.Ct. 421 (1995). Once it decides upon these elements, however, "it may not convict without proof beyond a reasonable doubt that every element was present in the particular case, and therefore without the jury's being instructed on each element." Id. (citing In re Winship, 397 U.S. 358, 364 (1970)). Gilreath's claim that Indiana has abolished the doctrine of transferred intent and therefore could not use it in his case, is actually a claim that under Indiana law in order to show that a defendant is guilty of murder, the state must prove that the defendant actually killed the person whom he intended to kill. Therefore, the characterization by the state and the district court that Gilreath's transferred intent argument concerns only state law and therefore is not cognizable in a petition for habeas corpus goes too far. However, while Gilreath might have a constitutional claim if the state convicted him for acts that were not criminal under Indiana law, the state has not done that here. Gilreath argues that IND.CODE § 35-41-2-2, which defines intentional, knowing, and reckless conduct, abolished the doctrine of transferred intent when it was enacted in 1977. However, as the Indiana Court of Appeals pointed out in Gilreath's state proceeding, Gilreath, 577 N.E.2d at 1000, case law from the Indiana Supreme Court has held that the doctrine of transferred intent is still alive in Indiana. See Tucker v. State, 443 N.E.2d 840, 842 (Ind.1983) ("The fact that he did not strike his intended victim but instead injured another is not a defense.... [because] the defendant's intent is transferred from the person against whom it was directed to the person actually injured."); Norris v. State, 419 N.E.2d 129, 133 (Ind.1981) ("Under the doctrine of transferred intent, the essential element is present if the accused intended to kill someone."). Whether or not we would read the Indiana statute differently is not relevant, for we have "no authority to tell the Indiana Supreme Court how to construe Indiana statutes." Whipple v. Duckworth, 957 F.2d 418, 422 (7th Cir.), cert. denied, 506 U.S. 876 (1992). The Indiana Supreme Court recognizes the doctrine of transferred intent and therefore Gilreath's first claim fails.
 
 
 5
 The second issue that Gilreath raises is that the trial judge improperly relieved the state of its burden of proving all the elements of the crime beyond a reasonable doubt when he instructed the jury that it was permissible for them to draw certain inferences from a person's actions. A defendant has a constitutional right to have a jury determine beyond a reasonable doubt whether he engaged in every element of the crime with which he is charged. United States v. Gaudin, 115 S.Ct. 2310, 2320 (1995); Stewart v. Duckworth, No. 93-3727, slip op. at 6 (7th Cir. Aug. 2, 1996). An instruction to the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts" is violative of a defendant's right to due process because it relieves the state of the burden of proving each element of the offense. Sandstrom v. Montana, 442 U.S. 510, 513 (1979). Such a mandatory presumption, even if rebuttable, puts an unconstitutional burden upon the defendant to disprove his guilt by having to establish more than reasonable doubt. Yates v. Evat, 500 U.S. 391, 402 (1991). However, the Supreme Court has held that an instruction that creates a permissive presumption, whereby the jury is allowed to draw an inference based upon the prosecution's proof of predicate facts, is constitutional so long as the conclusion that the jury is asked to draw is "one that reason and common sense justify in light of the proven facts before the jury." Francis v. Franklin, 471 U.S. 307, 314 (1985).
 
 
 6
 The instruction that Gilreath challenges in the present case stated: "You are instructed that intent or knowledge is a mental state which may be determined by examination of surrounding facts and circumstances to infer the existence of knowing or intentional conduct." This instruction did not direct the jury to presume intent from the defendant's actions. It told them that they may look at the surrounding facts and circumstances so as to infer knowledge or intent. Therefore, this directive falls within the range of instructions that the Supreme Court has held to be constitutional. Moreover, in determining whether a challenged instruction results in unconstitutional burden shifting, we must examine the instruction in question in light of the jury instructions as a whole. Francis, 471 U.S. at 315. In the present case, the judge instructed the jury that a person charged with a crime is presumed innocent and that to overcome that presumption the state must have proven beyond a reasonable doubt each element of the crime. He additionally informed the jury that the defendant need not present any evidence of his innocence. Our examination of the instruction in question along with the entire jury charge leads us to conclude that the trial judge's jury charge did not result in unconstitutional burden shifting. Because we reach this conclusion, we need not address the respondent's argument that the error here, if any, was harmless.
 
 
 7
 We now examine whether Gilreath had a constitutional right to have the jury instructed on voluntary manslaughter and/or reckless homicide. We have held that if a lesser included offense exists under state law, a judge's failure to instruct the jury on the lesser offense is constitutional error meriting reversal if the failure to instruct can be said to result in a fundamental miscarriage of justice. Nichols v. Gagnon, 710 F.2d 1267, 1269 (7th Cir.1983), cert. denied, 466 U.S. 940 (1984). Under this standard, we will not grant the habeas petition if it is a close question under state law as to whether to give the instruction on the lesser included offense. Id. (It is debatable if a defendant has any constitutional right to have a jury instructed on a lesser included offense in light of the fact that we recently reversed ourselves with regard to the similar issue of a defendant's right to have a jury instructed on an affirmative defense and held that no such right exists. See Eaglin, 57 F.3d at 502 (overruling Whipple, 957 F.2d at 423)).
 
 
 8
 In the present case, Gilreath's claim that he was entitled to an instruction on the offense of voluntary manslaughter, presents at best a close case and therefore he does not meet the standard for overturning a state court conviction. Under Indiana law, an act that would be considered murder is reduced to voluntary manslaughter if the perpetrator acted with sudden heat. IND.CODE § 35-42-1-3. In order for a homicide to be considered voluntary manslaughter, "there must be sufficient provocation to arouse the emotions of an ordinary person so as to obscure his reasoning powers." Smedley v. State, 561 N.E.2d 776, 781 (Ind.1990). The Indiana Supreme Court has held that the fact that the defendant was angry is not sufficient to reduce to voluntary manslaughter a homicide that would otherwise be murder. Rather, there must be evidence of "sudden intense passion that might be presumed to render [the defendant] incapable of rational thought." Jewell v. State, 539 N.E.2d 959, 963 (Ind.1989). Here, the Indiana Court of Appeals concluded (and we presume this finding to be correct, 28 U.S.C. § 2254(d)), that information regarding the sexual abuse of Gilreath's niece was first related to him in January 1989, 10 months prior to the incident. Gilreath, 577 N.E.2d at 1001. It is also undisputed that after he was again told of the sexual abuse on the date in question, he left his brother's house, stopped to make a phone call to ascertain whether Emerick was at the Treace residence, and then drove to the Treace residence to confront Emerick. Id. While there is evidence that Gilreath was enraged by what he had heard, it appears doubtful that he was incapable of rational thought. Therefore, the trial court did not commit error of constitutional magnitude in declining to give an instruction on voluntary manslaughter.
 
 
 9
 Gilreath's claim that he was entitled to an instruction on reckless homicide or involuntary manslaughter is also not persuasive. The minimum mens rea for murder is an awareness of a high probability that one's actions will result in killing a person. IND.CODE §§ 35-42-1-1, 35-41-2-2(b); Storey v. State, 552 N.E.2d 477, 483 (Ind.1990). Reckless homicide, in contrast, involves a killing committed with plain, conscious, and unjustifiable disregard of the fact that one's actions might cause death. IND.CODE §§ 35-42-1-5, 35-41-2-2(c); Storey, 552 F.2d at 483. In the present case, faced with undisputed evidence that Gilreath fired 15 rounds from a rifle in the direction of people that he saw, the trial court did not commit constitutional error in concluding that there was insufficient evidence to raise a jury question as to whether Gilreath's mental state made the homicide reckless as opposed to knowing. Regarding involuntary manslaughter, that crime involves an incidental killing that occurs when the defendant is committing a class C or D felony or class A misdemeanor. IND.CODE § 35-42-1-4. The killing in the present case was not incidental to another crime (except the attempted murder, which is a Class A felony, IND.CODE § 35-41-5-1) and therefore there was no basis to instruct the jury with regard to this offense.
 
 
 10
 Having concluded that Gilreath did not have a right to have the jury instructed on the lesser included offense of voluntary manslaughter, the fourth issue he raises, that he had a constitutional right to introduce evidence that his niece was molested, becomes a non-issue. The only issue upon which this evidence could have bearing is Gilreath's state of mind at the time he committed the killing. Because there was insufficient evidence to raise a jury issue regarding sudden heat, whether his niece was molested was irrelevant to Gilreath's defense.
 
 
 11
 Even beyond the fact that Gilreath did not have the right to have the jury pass on voluntary manslaughter, the trial judge acted within his discretion in excluding the molestation evidence as irrelevant. In determining whether to grant a petition for habeas corpus, we do not review whether the trial judge acted in compliance with state law. Stomner v. Kolb, 903 F.2d 1123, 1128 (7th Cir.), cert. denied, 498 U.S. 924 (1990). We will only grant the petition on the ground of an evidentiary ruling if it results in a fundamentally unfair trial or the denial of a specific constitutional right. Gilreath has not shown that either of these concerns was implicated by the court's refusal to introduce evidence that his niece was molested.
 
 
 12
 We move now to the sixth issue that Gilreath raises because it also involves an evidentiary question. This time he argues that the court's admitting into evidence photographs of one of the victims, photographs of Gilreath in prison attire, photographs of Gilreath's vehicle in which shotgun shells were visible and a videotape of the victim, was so prejudicial as to deny him due process. We know of no specific constitutional right that the admission of this evidence violated, and therefore we must determine whether the admission of this evidence resulted in a fundamentally unfair trial. Id. In this case there was no doubt that Gilreath committed the acts in question and therefore most of this challenged evidence only showed the jury that which Gilreath was not contesting. In addition, the evidence showed the results of Gilreath's crime. Therefore, although the evidence did not shed a positive light upon Gilreath, it was not prejudicial in the sense of allowing the jury to form a negative impression of the defendant for reasons not relevant to the crime with which he was charged. Also, although a picture of Gilreath in a prison uniform might have had some minor influence upon the jury's view of him, we do not see how it could have inflamed the jury to such a degree that Gilreath was denied a fundamentally fair trial. Thus, we rule against Gilreath on issue six.
 
 
 13
 The last issue we address is Gilreath's contention (the fifth issue he raises in his appellate brief) that the trial court erred in denying his motion to suppress statements he made to the police. Gilreath argues that two sets of statements were inadmissable. First, he argues that statements that he made to the 9-1-1 dispatcher, whom he called after he fled the crime scene, as well as statements he made to officers while he was being transported and processed prior to formal questioning, must be suppressed because he was not advised of his Miranda rights prior to making these comments. See Miranda v. Arizona, 384 U.S. 436 (1966). Second, he argues that statements he made during formal questioning (at which point he had been advised of his rights) must be suppressed because he did not make them voluntarily.
 
 
 14
 The trial court held a hearing on Gilreath's motion to suppress. We presume that the trial judge's findings of historical fact are correct. 28 U.S.C. § 2254(d); Thompson v. Keohane, 116 S.Ct. 457, 464 (1995). However, we undertake a de novo review of the trial court's findings that required the application of law to facts, such as whether the defendant was in custody at the time that he made a given statement and whether his confession was voluntary. Id. at 464-65. In the present case, the trial judge determined that Gilreath was not in custody at the time he made his statements to the 9-1-1 operator and when he made his statements to the arresting officers. The judge concluded that the remarks that he made during fingerprinting were not given in response to a question, but rather were made spontaneously by Gilreath. He concluded, therefore, that these remarks by Gilreath were admissible notwithstanding the fact that no Miranda warnings had been given up to the time of Gilreath's utterances.
 
 
 15
 With respect to Gilreath's statements during questioning, the judge, after having reviewed the videotape of the interrogation, stated that at the time he made the statements he was sufficiently aware of his surroundings to have knowingly waived his rights. In addition, based both upon the videotape and upon the hearing testimony, the judge concluded that the officers did not coerce, threaten or intimidate Gilreath. He went on to say that the two detectives and Gilreath all seemed comfortable and relaxed and their verbal interaction appeared conversational. He also said that in watching the video that at no time did he see any of the parties (the two officers and Gilreath) violate each other's space in a forceful manner. Beyond this, the judge found that the fact that Gilreath was able to diagram his conduct for the officers indicated that he had his wits about him. The judge therefore concluded that Gilreath's statements were made voluntarily. (The judge suppressed another statement that Gilreath made later. This is not relevant to the present issue.)
 
 
 16
 We first address the issue of the statements that Gilreath made prior to his formal interrogation. Police must warn a defendant of his right to remain silent, the consequences of his speaking, and his right to counsel, only if the defendant is in custody at the time of the interrogation. Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam ). Moreover, the restriction on the use of incriminating statements made without prior warnings having been given does not apply to statements made voluntarily in the sense of not being given in response to any question. Miranda, 383 U.S. at 478; Andersen v. Thieret, 903 F.2d 526, 532 (7th Cir.1990). Our review of the record indicates that the statements that Gilreath made prior to his formal interrogation need not be suppressed. There is no question that he was not in custody at the time that he confessed his crime to the 9-1-1 dispatcher; he was on the phone at a truck stop and called the dispatcher of his own free will. Based upon the all but undisputed testimony (Gilreath responded that he did not remember the circumstances under which he gave his statements) of police officers, we conclude that the statements Gilreath made at the time he was arrested and when he was being fingerprinted, he made spontaneously and not in response to any question. Therefore, the trial judge did not commit constitutional error in not suppressing these statements.
 
 
 17
 We now address the statements Gilreath made during his interrogation. Gilreath concedes that he was given the full set of Miranda warnings, but argues that due to the fact that he was under duress and had not slept for 24 hours, that the statements he made were not voluntarily given. Although we must make our own determination as to whether these statements were made voluntarily, we rely upon the factual findings of the trial judge, who witnessed the videotape of Gilreath's confession. He described the interaction between Gilreath and the officers as cordial and characterized Gilreath's appearance as lucid. We also have examined the suppression hearing record and find that there was nothing coercive about the way in which Gilreath was treated. The record contains a form listing one's Miranda rights. Gilreath signed the form below the printed statement that indicates that one signing the form understands his rights. One of the officers who interrogated Gilreath, Roy Stevens, testified at the suppression hearing that he went through each of the rights listed with Gilreath and that Gilreath acknowledged that he understood his rights. Stevens also testified that Gilreath appeared to understand his rights. Gilreath claimed, however, that he did not understand his rights because of his mental state at the time. Beyond claiming that he was in a distressed mental state, Gilreath does not now (nor did he during his suppression hearing) allude to any particular factor that made the setting coercive or made his confession involuntary.
 
 
 18
 We conclude, based upon the trial judge's findings and our examination of the suppression hearing transcript, that Gilreath clearly and voluntarily waived his rights. The evidence shows that he acknowledged understanding the rights and signed the waiver form of his own free will. In addition we conclude that his confession was voluntarily made. A confession is voluntary if it "was not secured through psychological or physical intimidation, but rather was the product of a rational intellect and free will." United States v. Hadon, 927 F.2d 942, 945 (7th Cir.1991). We do not doubt that Gilreath was quite distressed over the events that led to the shooting as well as the shooting itself. However, he was clear-headed enough to call 9-1-1, describe what he had done and tell the dispatcher where he was. The testimony and the judge's findings indicate that Gilreath was fully advised of his rights and that he was in no way coerced or intimidated. Moreover, the only thing that Gilreath points to as a reason that his confession was not voluntary, is the fact that he was distressed over the crime he had just committed. We are not persuaded by this argument. Moreover, if one could claim that a confession was not voluntary on the ground that one had just committed a crime, then no confessions would ever be admissible. We therefore conclude that the trial judge did not commit constitutional error in admitting into evidence statements Gilreath made concerning his actions.
 
 
 19
 Having found no error which merits reversing Gilreath's conviction, the order of the district court denying the petition for habeas corpus is
 
 
 20
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Subsequent to the parties' submitting briefs to this Court, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214. This law, inter alia, amends 28 U.S.C. § 2254(d) to require federal courts to give greater deference to state court findings in habeas corpus proceedings than under the previous law. Because in the three months since the enactment of this law the state has not asked us to consider whether it affects this case, we consider the issue waived. See Emerson v. Gramley, Nos. 95-2988, 95-3018, slip op. at 2 (7th Cir. July 30, 1996). Therefore all references to the codified habeas corpus statute will be to the version that existed prior to the effective date of the new law