Gary MUELLER, Appellant,

v.

STATE of Indiana, Appellee.

No. 1085S393.

Supreme Court of Indiana.

Jan. 12, 1988.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a verdict of guilty of First Degree Murder and guilty of Murder While in the Perpetration of a Robbery. The trial judge entered judgment on both charges; however, the sentence was fifty (50) years for Murder While in the Perpetration of a Robbery. The commitment issued to the Department of Correction shows appellant was convicted of Murder, a Class A felony, and Felony Murder. However, it reflects that he was sentenced only on the Felony Murder count. The cause is remanded to the trial court for proper judgment. The trial court is in all other things affirmed.

The facts are: For approximately five (5) years before the instant crime, appellant had been hitchhiking around the country. On October 20, 1984, he hitchhiked to Indianapolis and stayed a few days with a girl friend who lived on South Pennsylvania Avenue. On October 24, 1984, he was hitchhiking out of Indianapolis and was picked up by Louis Polk, the victim in this case. Polk took appellant to a tavern

where Polk was known by the bartender. At the tavern, they consumed beer and pizza which was purchased by Polk. They went to another bar where they drank more beer. They then went to Polk's home where they watched television and drank mixed drinks. Sometime during the evening appellant struck Polk on the head with a 1.75 liter liquor bottle. The blow crushed Polk's skull to the extent that a portion of the bone penetrated his brain. When Polk's body was discovered, his house had been ransacked, the telephone wires had been cut, and his GMC truck was missing.

Appellant's version of the incident was that Polk made homosexual advances to him and that he "tapped" Polk on the head to defend himself. Later that evening appellant was arrested for driving under the influence in Polk's GMC truck. He spent the rest of the night in the Marion County Jail. He explained the blood on his shoes by stating that he had had a nose bleed, and he explained his possession of the truck by saying that he was running an errand for his quadriplegic roommate at the time he was stopped.

He was released on his own recognizance the next morning and retrieved the truck by paying the towing charge. He left a note with his girl friend, Michelle Thomas, stating that he was driving the truck to Colorado for another person. He then drove to the State of Washington and then to California where he was arrested. He was still driving Polk's truck and was still in possession of Polk's Texaco credit card which he had used on the trip to buy food and gasoline. He also was still wearing the bloodstained tennis shoes. The blood on the tennis shoes was shown to be the same type as the blood of the victim.

Appellant claims the trial court erred in admitting State's Exhibit No. 12, a color photograph of the victim's face. Appellant claims that, although the State introduced the photograph for the purpose of identifying the victim, the victim had been identified by other means and the photograph was thus repetitious and introduced solely to arouse the passion of and prejudice of the jury.

An autopsy was performed on the victim by Dr. Holly, who testified at the trial. State's Exhibit No. 12 was used by Dr. Holly to identify the person upon whom he performed the autopsy. The fact that a photograph is gruesome or revolting does not necessarily make it inadmissible. The trial judge may determine the relevancy of a photograph by determining whether or not a witness would be permitted to describe verbally the scene depicted in the photograph. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228.

■ In the case at bar, Dr. Holly used the photograph for identification purposes. The photograph clearly depicted facts described by him in his testimony. There was no error in admitting State's Exhibit No. 12.

Appellant claims the trial court erred in admitting State's Exhibit No. 2, an array of photographs, which were police "mug shots" that had been prepared for trial by the State by covering up all identification markings on the photographs. It is true that generally "mug shots" are inadmissible because they infer that a defendant has a prior criminal record. *Head v. State* (1982), Ind., 443 N.E.2d 44. However, in the case at bar, the State had carefully prepared the photographs so as to obscure the police information thereon.

■ Appellant argues that the photographs obviously had a portion covered up which would be a clue to the jury that they were in fact "mug shots"; this procedure, however, has been found to be acceptable by this Court. *See Walker v. State* (1984), Ind., 471 N.E.2d 1089. There was nothing visible to the jury in State's Exhibit No. 2 that would inform them of a prior criminal record of appellant. The trial court did not err in admitting the exhibit into evidence.

Appellant claims the trial court erred in admitting State's Exhibit No. 65 into evidence. The exhibit was a handwritten note purportedly sent by appellant to his girl friend, witness Michelle Thomas. The note gave Thomas appellant's Tacoma, Washington address and stated: "If I'm not at that address, I'll be in jail in Tacoma. I won't

be there for about 11 days[.] I do love you."

■ Appellant objected to the note on the grounds it was irrelevant and immaterial and argues that the use of the word "jail" in the note could have led the jury to believe that appellant had a criminal history. The State argues that the note was admissible because it showed appellant's intent to flee the jurisdiction after the commission of the crime, and further that the note was used as a handwriting exemplar to identify a known sample of appellant's handwriting with the handwriting on the credit card receipts signed by appellant as he travelled across the United States. The State further argues that the fact the note referred to "jail" could just have easily referred to appellant's expectation of being arrested on the instant crime as it would indicate prior criminal activity. We agree with the State that the note was admissible for the above-stated reasons. The trial court did not err in allowing it into evidence.

Appellant claims the trial court erred in admitting State's Exhibits Nos. 49, 49(a), and 49(b). These exhibits consisted of a cardboard box containing a pair of trousers and a pair of undershorts belonging to the victim. Appellant objected to their admission on the ground that the chain of custody had been broken because the box bore a different autopsy number than did its contents.

The State argues that the difference in numbers was a clerical error and points out that the clothing was sufficiently identified by Officer Warman who was at the scene of the crime, observed the clothing on the victim, removed the clothing from the victim, and identified the clothing in court as being those same objects. Further, State's witness Carol Kohlmann, a serologist, testified that the blood on the clothing was from the same source as the blood on appellant's tennis shoes and the blood on the liquor bottle used to bludgeon the victim.

■ The requirements of an unbroken chain of custody are much more severe as to fungible items than they are to non-fungible items such as the evidence in question here. A non-fungible item may be admitted into evidence based on testimony that the item is like the one in question and is identified as being connected with the crime. *Davis v. State* (1985), Ind., 472 N.E.2d 922. There was no error in admitting the exhibits into evidence.

Appellant claims the trial court erred in not admitting into evidence the video-taped statement he made shortly after being taken into custody. Appellant states that his statement was not a confession but contains self-serving statements only. He maintains that this tape was admissible to show his state of mind at the time.

■ In the case at bar, appellant testified in his own behalf and was free to tell his version of the entire matter as he saw fit. It would have been highly improper to admit a prior self-serving declaration into evidence. *Cain v. State* (1973), 261 Ind. 41, 300 N.E.2d 89; *Gayer v. State* (1964), 247 Ind. 113, 210 N.E.2d 852. The trial court did not err in excluding appellant's video-taped statement.

■ Appellant claims the trial court erred in allowing the State to question him concerning his magazine sales pitch and in allowing the State to question him concerning his hitchhiking in the past. When appellant took the witness stand to testify, this placed in issue his credibility as a witness. On cross-examination, the State questioned him concerning untrue statements he made while making a sales pitch for magazines. This evidence was directly relevant to appellant's credibility and his penchant for misrepresenting facts. The evidence was proper to show the moral character of the witness. Ind.Code § 35–37–4–2. The State also cross-examined appellant on his five (5) year history of hitchhiking across the country. This cross-examination was proper in view of appellant's direct testimony that he had not been accosted before by a homosexual and that such confrontation frightened him to the point of causing him to strike the victim.

By cross-examination, the State brought out appellant's many experiences and contacts with strangers during his hitchhiking

experiences. As a matter of fact, although appellant had maintained on direct examination that he had never been approached sexually by another man, after the cross-examination and on redirect examination, he testified that one man picked him up and made sexual advances and that he asked to be and was put out immediately on the highway. The cross-examination was well within the scope of the points brought out on the direct examination. *See Porter v. State* (1979), 271 Ind. 180, 391 N.E.2d 801. The trial court did not err in allowing the cross-examination.

 Appellant claims the trial court erred in not giving his Tendered Jury Instruction No. 1. The instruction covered the crime of involuntary manslaughter. In the case at bar, appellant was charged with Murder and Murder While in the Perpetration of a Robbery. Involuntary manslaughter is not a lesser included offense of felony murder. *Rodriguez v. State* (1979), 270 Ind. 613, 388 N.E.2d 493. As to the First Degree Murder count, the State charged that appellant "did knowingly kill another human being, to-wit: LOUIS POLK, by striking and beating the said LOUIS POLK about the face and head by means of a deadly weapon, to-wit: ...." This language is virtually identical to the language used by the State in *Sills v. State* (1984), Ind., 463 N.E.2d 228. In that case, Justice Hunter correctly pointed out that when the State chooses to only charge murder it forecloses the included lesser offense of involuntary manslaughter. As to appellant's contention concerning reckless homicide as an included offense, this Court has held that when the evidence indicates a direct attack by the appellant upon the victim resulting in the death of the victim reckless homicide is not an included offense. *Heald v. State* (1986), Ind., 492 N.E.2d 671.

The trial court did not err in refusing to give an instruction on involuntary manslaughter or an instruction on reckless homicide.

This cause is remanded to the trial court with instructions to expunge its judgment of guilty of First Degree Murder and to forward a corrected commitment to the Department of Correction showing that appellant stands convicted only of Murder While in the Perpetration of a Robbery.

In all other things the trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.