Michael WEDMORE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 29S00–8606–CR–623.

Supreme Court of Indiana.

Feb. 23, 1988.

---

Michael A. Howard, Pearce & Howard, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Michael Wedmore was found guilty by a jury in the Hamilton Circuit Court of the crime of Murder and was sentenced to a term of sixty (60) years.

The sole issue presented for our review in this direct appeal is the refusal of the trial court to instruct the jury on lesser included offenses of reckless homicide and involuntary manslaughter, and the failure to give an instruction defining these offenses.

The evidence showed that Marcia Kaiser resided in an apartment in Noblesville, Indiana, with her five-year old daughter Heather and twin daughters Jannette and Janelle, ages two and one-half years. Also residing with Kaiser was her friend and co-worker, Donna Sedam, and her son, Ryan, age eleven months. Wedmore also lived with Kaiser and her family for a period of about two months prior to the incident from which this case arose.

On August 25, 1984, Wedmore returned to the Kaiser apartment at approximately 2:20 p.m. while Kaiser and Sedam were preparing to go to work. At about 2:15 p.m., Kaiser had put the children to bed for a nap. At approximately 2:30 to 2:35 p.m., Wedmore, who was left to care for the children while their mother worked, received a telephone call from Leo Ahern, his supervisor at work. The phone conversation was ended abruptly when Wedmore told Ahern "Leo, I'm sorry I can't talk to you any more. I've got a little girl that just pissed all over the floor."

At approximately 3:05 p.m. Kaiser received an emergency phone call from Wedmore stating Janelle had fallen out of her crib, she was not breathing, and she wouldn't wake up. Wedmore called for an ambulance. The paramedics received the call at 3:18 p.m., and arrived at the Kaiser apartment at 3:24 p.m.

The paramedics attempted to revive the child and then transported her to the hospital where life sustaining techniques were immediately started on Janelle and continued until her death on Sunday morning at 11:30 a.m. Wedmore first claimed the child had fallen out of her crib and hit her head on the rocker of a small rocking chair. He later stated he had located the injured child in the bathroom, and still later gave another account in which he claimed he was half asleep on the couch when someone came to the door but he could not recall who the man was. Finally, at trial, Wedmore indicated he had whipped the child for wetting the bed and ".. when I did she fell over the side of the crib but I caught her by her ankle just before she hit ... she tapped the floor." Dr. John Pless performed an autopsy on Janelle on August 27, 1984 and found the cause of death to be multiple blunt force injuries to the head and brain. It was his opinion the manner of death was a child abuse homicide. He found the blows to Janelle's head and body to be numerous and overlapping so as to make it impossible to determine how many blows there were, but found Janelle had been struck on the head at least six to eleven times and had been struck on other areas of her body from ten to twenty times. It was his testimony the multiple injuries and their distribution on all surfaces of Janelle's body belied the possibility of an accident or of at least a single accident as Wedmore had indicated.

Wedmore requested the trial court to give Indiana Pattern Jury Instructions 3.09 and 3.11 which defined the offenses of involuntary manslaughter and reckless homicide. He also requested the court to instruct the jury as to the statutory definition of the term "recklessly." After hearing defense counsel's arguments the trial court refused Wedmore's tender on the lesser included offenses based on rulings of this court in *Sills v. State* (1984), Ind., 463 N.E.2d 228; *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208; and *Jones v. State* (1982), Ind., 438 N.E.2d 972. The trial court then instructed the jury only on the crime of murder.

The test for determining the propriety of an instruction on a lesser included offense is well established by the above cited cases and their progeny. The first step involves examining the statutes involved and the charging information, while the second involves examining the evidence. *Jones*, 438 N.E.2d at 975, reasoned: "The State through its drafting can foreclose as to the defendant, the tactical opportunity to seek a conviction for a lesser offense. The point is that absolute discretion rests in the State to determine the crimes with which a defendant will be charged." *Sills* followed *Jones* and pointed out the charging information alleged Sills knowingly and intentionally killed another human being by striking and beating at and against the body of the victim with his fist, thereby causing her to die. The information in the instant case reads:

"That on this day, before me, Lori B. Christman, Notary Public, comes Nick Campbell, who, being duly sworn upon his oath, says that Michael Andrew Wedmore on or about the 26th day of August A.D. 1984, in the County of Hamilton, State of Indiana, did knowing kill Janelle Kaiser by striking and/or beating against the body and/or head of Janelle Kaiser causing said Janelle Kaiser to die, all of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

It is apparent from the language of the information that the State sought to charge and seek a conviction only to the charge of murder. The evidentiary test set out by *Lawrence* first requires a decision whether a conviction of the crime charged necessitates proof of all the essential elements of the lesser offense together with the added element which makes the difference in the two offenses. The second step requires a

decision as to whether there is evidence of probative value from which the jury could properly find the defendant guilty of such lesser offense. This two-step test has been followed by this court in *Averhart v. State* (1984), Ind., 470 N.E.2d 666; *Outlaw v. State* (1985), Ind., 484 N.E.2d 10; *Bedgood v. State* (1985), Ind., 477 N.E.2d 869; and *Henning v. State* (1985), Ind., 477 N.E.2d 547.

Although the defendant sought to explain the death of the two and one-half year old infant by stating he slapped her once and caused her to fall from the crib and strike her head, the overwhelming evidence told an entirely different story that was consistent with the charging information. The evidence showed Wedmore was entrusted with the custody of Janelle, who was asleep in her crib. Less than half an hour later, she was in an emergency condition, and two days later, Janelle died. Dr. Pless described her as follows:

"A. The body of Janelle Kaiser measured thirty-four inches in length and I estimated the weight to be around thirty-five pounds. There were multiple injuries on the body. The most significant of those injuries were to the head. They consisted on the outside of the body of bruises and abraisions [sic] or contusions and abrasions. They were present on all surfaces of the head and by that I mean, they were present on the right, the back, the left as well as the front. Starting with the right side of the head there was a fairly large bruise or contusion which involved most of the right side of the head and extended back over the ear and there was a small petechial hemorrhage in the ear. These injuries were indicative of blunt force to the head and there was considerable hemorrhage beneath the scalp in this area as well. In addition, there were bruises to the forehead and overlying those bruises there was [sic] abrasions. There were also three discrete bruises or contusions of the back of the head. They were approximately ... overall they were two to three inches in extent and they also were associated with hemorrhage beneath the scalp in this area of the head. There were bruises on the left side of the head both in front of the ear and low on the left jaw as well as immediately behind the ear. There were two discrete bruises or contusions of the forehead which measured a half and one inch in extent as well as a light blue bruise or contusions in the center of the forehead as well. There were multiple bruises and abrasions over the body. Starting with the back, there were two light blue-grey bruises on the back. These were approximately one-half to three-quarters of an inch in their extent. There were multiple red-brown bruises on the buttocks. Moreso on the right than on the left. These varied from one-half to three-quarters of an inch. There were also bruises on the ankles and wrists and on both elbows. There were bruises on the front part of the right lower leg as well as very prominent bruise on the lateral or outside of the midportion of the right thigh which was two by one and a quarter inches in extent. On examining the body internally, there was evidence primarily of injury to the brain with swelling of the brain and overlying the brain there was a hemorrhage which is called a subdural hemorrhage which simply means that there was a collection of blood beneath the fibrous membrane that the brain is encased in. The brain was very swollen and a portion of the brain had herniated through the base of the scull [sic] indicating the mark of swelling that was related to the mechanism of death. I believe that consti-

tutes the major findings of the autopsy.

Later Dr. Pless testified that:

In my opinion, the cause of death of Janelle Kaiser was multiple blunt force injury to the head and brain.

Again, Dr. Pless stated:

The injuries on all surfaces of the body are the result of multiple blunt force of a moderate degree. They are produced by an object that is relatively smooth but could possibly have some fine rough edges. Their distribution on all surfaces of the body belies the possibility of an accident. Certainly not a single accidental injury. These are extensive injuries in my experience and are certainly within the realm of fatal injuries."

Because the language in the charging information is clearly supported by the evidence, and the evidence presented at trial establishes Janelle's death was not caused by a reckless or involuntary act, the trial judge was justified in finding it inappropriate to instruct the jury on lesser included offenses of involuntary manslaughter and reckless homicide. *Lawrence*, 375 N.E.2d at 212, 213.

The trial court is affirmed.

DeBRULER, GIVAN, and DICKSON, JJ., concur.

SHEPARD, C.J., dissents without separate opinion.