Michael SHARKEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–8807–CR–683.

Supreme Court of Indiana.

Aug. 17, 1989.

James Stanton, Appellate Division, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Michael Sharkey was found guilty following a jury trial in

the Lake Superior Court of the crime of Voluntary Manslaughter, a Class B felony, and was sentenced to a term of twenty (20) years.

Issues presented for review in this direct appeal are:

1. denial of Appellant's Motion *in Limine* prior to trial; and

2. permitting the State to present a rebuttal witness.

Sharkey was charged with the murder of Pamela Summers in Lake County, Indiana, on July 6, 1987.

On Sunday evening, July 5, 1987, at or about 10:00 p.m., Sharkey went to The Spot, a tavern in Calumet City, drank some beer, then went to another tavern nearby and had several drinks. He then returned to The Spot and began playing pool with a girl at her invitation. He had seen her there before. He had several more drinks and became intoxicated. The girl, Pamela Summers, the victim here, told Sharkey she was a prostitute and charged only twenty dollars. He gave her twenty dollars and they left in his automobile. While he was driving she began to perform oral sex on him and then bit him. He claimed he tried to push her away and she became very violent, beating on him and biting him while he was trying to drive. He put his hand on her neck and squeezed tightly, attempting to push her away from him when she went limp and motionless. He tried to revive her but realized she was dead. He then took her to his home at 7211 Van Buren Street and dragged her body up to his bedroom because he did not know what to do with it. After drinking more vodka in his room he had sexual intercourse with the body. Sharkey's stepbrother, Ted Garrity, and his aunt lived in the house with Sharkey. Garrity had heard some noise in the house and asked Sharkey what it was but Sharkey told him he had brought a drunk girl home with him. The next day, Sharkey realized he needed to get rid of the body so he dragged her back into his automobile, took her to an alley in the neighborhood and dumped her body. He later told Ted Garrity about the incident, stating he had accidentally killed a hooker and he had gotten rid of the body. Sharkey also told a service station attendant that he had killed a hooker and feared he would "fry" for it. Garrity and the service station attendant notified the police and Sharkey was arrested in his automobile. Both Garrity and Sharkey gave police permission to search their rooms and Sharkey gave a full confession to the police relating these facts.

## I

Sharkey claims the trial court erred when it denied his motion *in limine* filed prior to trial regarding his having had sexual intercourse with the victim after her death. He claimed it was irrelevant since it occurred after the killing and had nothing to do with the incident that led to her death. The ruling upon a motion *in limine* is not reviewable since it is not the purpose of such a motion to obtain a final ruling on the admissibility of evidence. To preserve error in the denial of such a motion, the proponent must make a proper objection at the time the challenged evidence is offered. *Barnett v. State* (1988), Ind., 523 N.E.2d 430, 432; *Remsen v. State* (1986), Ind., 495 N.E.2d 184, 189. Here, Sharkey did not object when Detective Myszak testified to the incident.

## II

Sharkey also claims the trial court erred in allowing the State to present a rebuttal witness because the State did not make the witness or the substance of her testimony known to him during discovery. The rebuttal witness was Emma Summers, a former sister-in-law and close friend of the victim. In his direct testimony, Sharkey testified he had never seen the victim before that night. Emma Summers testified that a few months before this incident, she observed Sharkey at the victim's apartment. Sharkey had brought a case of beer to the victim's apartment for a "party" and spent several hours there drinking beer with the victim. Sharkey again took the stand in surrebuttal and denied he had ever met the victim before the night in question. The prosecutor

claimed, and the witness corroborated his claim, that she had not told the prosecutor about seeing Sharkey and the victim together until a few days before her testimony. She stated she did not tell the police about it because they never interviewed her at length and never asked her about it. The witness was not presented in the State's case-in-chief because it was not relevant at that time and did not become relevant until Sharkey testified he had never known or seen the victim before the night in question. The trial court gave this as his reason for permitting the witness' testimony and found the prosecutor was not obliged to furnish this witness' name during discovery since her testimony would be pertinent only in rebuttal.

Rebuttal evidence is evidence which tends to explain, contradict, or disprove an adversary's evidence and the admission of rebuttal evidence is within the discretion of the trial court. *Watkins v. State* (1988), Ind., 528 N.E.2d 456, 459. Moreover, the State is under no obligation to provide a defendant with a list of its rebuttal witnesses. *Floyd v. State* (1987), Ind., 503 N.E.2d 390, 394; *Thompkins v. State* (1978), 270 Ind. 163, 169, 383 N.E.2d 347, 350. Emma Summers' testimony contradicted Sharkey's testimony that he had never seen the victim before that night. Therefore, this was proper rebuttal evidence and the trial court did not abuse its discretion in permitting it.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.