**Michael R. SHARKEY, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 45A04–9601–PC–6.

Court of Appeals of Indiana.

Oct. 15, 1996.

Transfer Denied Dec. 18, 1996.

Susan K. Carpenter, Public Defender, William D. Polansky, Deputy Public Defender, Indianapolis, for Appellant-Petitioner.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee-Respondent.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Michael R. Sharkey appeals the denial of his petition for postconviction relief.

We reverse and remand.

### ISSUE

The following issue is dispositive: whether the post-conviction court erred in ruling that Sharkey received effective assistance of trial and appellate counsel.

### FACTS AND PROCEDURAL HISTORY

On July 8, 1987, Sharkey was charged by information with one count of Murder. The charge was tried to a jury in January, 1988. The jury was given verdict forms for Murder, Voluntary Manslaughter, and Not Guilty. The jury returned a verdict of guilty of Voluntary Manslaughter as a class B felony. The conviction was confirmed by our supreme court on appeal in *Sharkey v. State*, 542 N.E.2d 556 (Ind.1989). In the decision, the supreme court set forth the facts of the case as follows:

> On Sunday evening, July 5, 1987, at or about 10:00 p.m., Sharkey went to The Spot, a tavern in Calumet City, drank some beer, then went to another tavern nearby and had several drinks. He then returned to The Spot and began playing pool with a girl at her invitation. He had seen her there before. He had several more drinks and became intoxicated. The girl, Pamela Summers, the victim here, told Sharkey she was a prostitute and charged only twenty dollars. He gave her twenty dollars and they left in his automobile. While he was driving she began to perform oral sex on him and then bit him. He claimed he tried to push her away and she became very violent, beating on him and biting him while he was trying to drive. He put his hand on her neck and squeezed tightly, attempting to push her away from him when she went limp and motionless. He tried to revive her but realized she was dead.

*Id.* at 557.

On August 2, 1991, Sharkey filed a pro se petition for post-conviction relief. On May 27, 1994, his newly obtained counsel filed an amended petition, alleging that (1) Sharkey was deprived of due process when the trial court did not instruct the jury on Involuntary Manslaughter and Reckless Homicide; and (2) Sharkey was deprived of effective assistance of counsel when trial counsel did not tender jury instructions on Involuntary Manslaughter and Reckless Homicide, and when appellate counsel did not raise the issue of assistance of counsel. An evidentiary hearing was held, and on October 2, 1995, the post-conviction court denied the petition. The post-conviction court reasoned that under *Sills v. State*, 463 N.E.2d 228 (Ind.1984), and its progeny, the trial court was not required to give the instructions because the charging information closely tracked the Murder statute. The post-conviction court further reasoned that because the instructions were not required, and would have presumably been refused by the trial court, trial counsel could not have committed preju-

dicial error in not tendering them. (R.158–60). Sharkey now appeals.

## DISCUSSION AND DECISION

Sharkey contends that the post-conviction court erred in ruling that he received effective assistance of trial and appellate counsel. He argues that the evidence presented at the post-conviction hearing established that trial counsel was ineffective in not tendering jury instructions on the offenses of Involuntary Manslaughter and Reckless Homicide. He further argues that appellate counsel was ineffective for not raising the issue of trial counsel's effectiveness.

The effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, § 13 of the Indiana Constitution. To prevail on a claim of ineffective assistance of counsel, a defendant must first show that specific acts or omissions by his attorney fall outside the "wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The defendant must also show that counsel's acts or omissions caused prejudice to the defendant. *Lawrence v. State*, 464 N.E.2d 1291, 1294 (Ind.1984) (adopting *Strickland* for Indiana). Prejudice may be established by a showing that "there is a reasonable probability that, but for the unprofessional errors, the result of the proceedings would have been different." *Id.* This "reasonable probability" is not a preponderance of the evidence standard, however, because "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2068. Rather, the defendant must show only a "probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Because of this prejudice requirement, "isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness." *Lawrence*, 464 N.E.2d at

1295. The reviewing court looks to the totality of the circumstances when evaluating claims of ineffective assistance of counsel. *Id.* at 1294. The standard for reviewing claims of ineffective assistance of trial and appellate counsel is the same. *Hackett v. State*, 661 N.E.2d 1231, 1233 (Ind.Ct.App. 1996).

In the present case, the State developed its case through the testimony of Detective Raymond Myszak. He related a statement that Sharkey made to the police at the time of his arrest: that Sharkey met Summers in a tavern, that he was driving with Summers as a front seat passenger, that she was performing oral sex on him and bit him, that he pushed her away, that she bit him on the chest, that he then squeezed her neck hard, that she started to gurgle, he let go, she went limp and motionless, and he then slapped her face and pinched her thigh in an effort to wake her up. (R. 258–64).

Sharkey testified at trial and admitted that he caused Summer's death. He added that after Summers bit his penis and he pushed her away, she began hitting him, so he grabbed her in a headlock and tried to hold her close. She then bit his chest, and he tried to hold her at arm's length by the shoulder, but she kept coming back, and he kept pushing her away. At some point, his hand slipped off her shoulder and he had her by the front of the neck. (R. 370–373). All this time, Sharkey continued to drive the car. In the end, he "pushed her neck real hard," because "[s]he was hurting [him], and [h]e intended to hurt her . . . ." (R. 373). Sharkey further testified, "I didn't mean to kill her; I never did." (R. 373).

The first question to be answered is whether counsel's failure to tender instructions on Involuntary Manslaughter and Reckless Homicide, as lesser included offenses of Murder, was error. Indiana criminal law includes seven homicide crimes, as set forth in Ind.Code 35–42. Of the seven, four are relevant to this case: Murder, Voluntary Manslaughter, Involuntary Manslaughter, and Reckless Homicide.[1] Among

---

1. The other three types of Homicide, Causing Suicide, Assisting Suicide, and Feticide, are clearly not relevant.

these four, the primary distinction is that the first two apply to a killing done intentionally or knowingly, while the latter two do not. Specifically, the offenses are defined in pertinent part as follows:

1. Murder, Ind.Code 35–42–1–1: to knowingly or intentionally kill;

2. Voluntary Manslaughter, Ind.Code 35–42–1–3: to knowingly or intentionally kill while acting under sudden heat;

3. Involuntary Manslaughter, Ind.Code 35–42–1–4(3): to kill while committing battery; and

4. Reckless Homicide, Ind.Code 35–42–1–5: to recklessly kill.

 In determining whether instructions on lesser included offenses should be given, the trial court must engage in a three step analysis. *Wright v. State*, 658 N.E.2d 563, 566 (Ind.1995). The first step is to compare the statute defining the offense charged with the statute defining the alleged lesser included offense. *Id.* If (a) the alleged lesser included offense may be established by proof of the same material elements or less than all the material elements defining the offense charged, or (b) the only feature distinguishing the alleged lesser included offense from the offense charged is that a lesser culpability is required to establish the commission of the lesser offense, then the alleged lesser included offense is inherently included in the offense charged. *Id.* If an offense is inherently included in the offense charged, then the trial court should skip the second step of analysis and proceed to the third step. *Id.* at 567.

The second step is to compare the statute defining the lesser included offense with the charging instrument in the case. *Id.* "If the charging instrument alleges that the means used to commit the [offense] charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is *factually* included in the [offense] charged, and the trial court should proceed to step three below." *Id.*

The third step is to look at the evidence presented in the case by both parties. *Id.* If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed, but not the greater, then "it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Id.*

Reckless Homicide is an inherently included offense of Murder, as the "only feature distinguishing Murder from Reckless Homicide is the lesser culpability required to establish the commission of Reckless Homicide." *Id.* at 567. Involuntary Manslaughter is not an inherently included offense of Murder. *Id.* at 569. However, it can be a factually included offense of Murder if the charging information alleges that the homicide was committed by a touching. *Id.*

The charging information in the present case alleges a touching in its most literal sense, as it alleges that the homicide was committed by "touching, striking, choking, smothering or strangling ... with the hands." (R. 6). Thus, Involuntary Manslaughter is a factually included offense.

The question of whether refusal of tendered instructions on Involuntary Manslaughter and Reckless Homicide would constitute reversible error turns on whether there was a serious evidentiary dispute on the element or elements distinguishing them from Murder. As stated above, there is no dispute that Sharkey caused Summers' death; he admitted that in his trial testimony. Thus, the distinguishing element is whether he intended to kill her.

Sharkey repeatedly denied that he intended to kill Summers. If the jury believed this denial, it could conclude that he killed Summers recklessly, or that she died as a result of battery. Therefore, there is a serious evidentiary dispute about the intent element, and in view of this dispute, the jury could conclude that either Involuntary Manslaughter or Reckless Homicide, and not the greater offenses of Murder or Voluntary Manslaughter, were committed. If the instructions on Involuntary Manslaughter and Reckless Homicide had been tendered, the trial court would have committed reversible error in refusing to give them.

It is clear that the failure to tender the instructions on Involuntary Manslaughter and Reckless Homicide was not a strategic decision by trial counsel. At the post-conviction hearing, trial counsel testified that according to his understanding of Indiana law, a defendant charged with Murder can be found guilty of Voluntary Manslaughter, even if there is no intent to kill, as long as there was sudden heat. This understanding is erroneous, as the statute defining the offense requires the killing to be done knowingly or intentionally. Trial counsel also testified that Sharkey's case was not an "all or nothing" type, and that there was a real possibility of having the jury instructed on lesser included offenses. (R.170). Therefore, it cannot be said that counsel's entire strategy was to rely entirely on self-defense.[2] It apparently never occurred to trial counsel that lesser included offenses might include Involuntary Manslaughter and Reckless Homicide.

The question remains as to whether trial counsel's error in failing to tender the instructions was prejudicial to Sharkey. As noted above, prejudice is found when there is a "reasonable probability that, but for the unprofessional errors, the result of the proceedings would have been different." *Lawrence*, 464 N.E.2d at 1294. The defendant must show a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. We look at the totality of the circumstances when evaluating the prejudice prong of an ineffective assistance of counsel claim. *Lawrence*, 464 N.E.2d at 1294. Without the instructions on Involuntary Manslaughter and Reckless Homicide, the charge to the jury was misleading because it presented the jury with only two options—convict for intentional killing or acquittal. The intermediate options of involuntary or reckless killing were not presented. The effectiveness of trial counsel is implicated by counsel's failure to tender instructions on lesser included offenses and the failure misleads the jury. *See Roark v. State*, 573 N.E.2d 881, 883 (Ind. 1991). The effectiveness of appellate counsel

is also implicated when counsel fails to raise the issue on appeal. *Id.*

The State contends that the issue was waived when it was not raised in the direct appeal. Generally, failure of trial counsel to tender instructions on lesser included offense results in a waiver of a claim of error on direct appeal. *Lane v. State*, 451 N.E.2d 659, 660 (Ind.1983). However, the issue may be raised on direct appeal as an allegation of ineffective assistance of trial counsel. *Roark*, 573 N.E.2d at 883. If appellate counsel is someone other than trial counsel, failure to raise the question of trial counsel's ineffectiveness ordinarily results in waiver of the issue such that it is precluded from argument in a petition for postconviction relief. *Stewart v. State*, 567 N.E.2d 171, 173 (Ind.Ct.App.1991), *trans. denied.* However, ineffective assistance of trial counsel may be raised in a petition for postconviction relief, notwithstanding waiver in the direct appeal, if the petitioner can show that appellate counsel was ineffective for omitting a claim of ineffective assistance of trial counsel from the direct appeal. *McFarland v. State*, 579 N.E.2d 610, 611 (Ind.1991). Here, appellate counsel was ineffective in failing to raise the issue, and the question of ineffectiveness of appellate counsel was addressed in both the petition for post-conviction relief and the post-conviction hearing.

The State also contends that the post-conviction court was correct in denying Sharkey's petition on the basis of *Sills*. In *Sills*, the court held that the State could preclude instructions on lesser included offenses by drafting the charge so that it closely tracked the statute defining the greater offense. 463 N.E.2d at 235. The State reasons that there was a chance that the trial court would have relied on *Sills*. The State further reasons that if trial counsel would have tendered instructions on Involuntary Manslaughter and Reckless Homicide, the trial court would have refused to give them.

*Sills* was expressly overruled by our supreme court in *Wright*. In *Wright*, the

---

**2.** An instruction on self-defense was given in this case. Had the defense hinged entirely on the defense, the failure to give instructions on lesser

included offenses would have been a matter of strategy. *See Sarwacinski v. State*, 564 N.E.2d 950 (Ind.Ct.App.1991).

court held that "the wording of a charging instrument *never* forecloses or precludes an instruction on an inherently lesser included offense." 658 N.E.2d at 567 (emphasis in original). It further held that the *Sills* court erred in determining that the charging instrument, which clearly alleged the accomplishment of Murder by a touching, foreclosed an instruction on Involuntary Manslaughter. *Id.* at 569.

The State concedes that *Sills* was overruled; however, it contends that *Sills* was good law which the trial court could have relied upon at the time of trial. The holding in *Sills* was contradicted by our supreme court in *Roland v. State*, 501 N.E.2d 1034 (Ind.1986) and *Outlaw v. State*, 484 N.E.2d 10 (Ind.1985), cases which came after *Sills* and were in effect at the time of Sharkey's trial. The only difference between the holding in *Wright* and the holdings in *Roland* and *Outlaw* is that the first two steps in *Wright* were stated as one step in the latter cases. If Sharkey's trial counsel had tendered instructions on Involuntary Manslaughter or Reckless Homicide, the trial court could have determined under *Roland* and *Outlaw* that it was required to give the instructions. As discussed above, the effectiveness of trial counsel was implicated by counsel's failure to tender the instructions.

The dissent states that "trial counsel should not be held ineffective for failing to anticipate *Sill's* demise." Opinion, p. 944. Of course, we do not place such a burden upon counsel. Trial counsel's ineffectiveness is not based on a failure to anticipate the demise of case law contrary to his defense; it is based upon his failure to recognize the validity of case law consistent with his defense. Trial counsel based his defense on lack of intent and the possibility of conviction upon lesser included offenses. He failed to tender the instructions necessary to force the trial court to determine whether *Sills* foreclosed his defense or *Roland* and *Outlaw* supported the same.

**3.** *See Avance v. State*, 567 N.E.2d 1149 (Ind. 1991); *Reinbold v. State*, 555 N.E.2d 463 (Ind. 1990); *Yawn v. State*, 539 N.E.2d 473 (Ind.1989); *Macon v. State*, 529 N.E.2d 343 (Ind.1988); *Decker v. State*, 528 N.E.2d 1119 (Ind.1988); *Wedmore v. State*, 519 N.E.2d 546 (Ind.1988);

*CONCLUSION*

The post-conviction court erred in determining that Sharkey received effective assistance of counsel.

We reverse and remand for proceedings consistent with this opinion.

DARDEN, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent. The majority holds that Sharkey's counsel was ineffective because of counsel's failure to recognize that "[T]he holding in *Sills* was contradicted by our supreme court in *Outlaw v. State*, 484 N.E.2d 10 (Ind.1985), a case which came after *Sills* and was in effect at the time of Sharkey's trial." Opinion, p. 943. The majority continues: "If Sharkey's trial counsel had tendered instructions on Involuntary Manslaughter or Reckless Homicide, the trial court *could* have determined under *Outlaw* that it was required to give the instructions." Opinion, p. 943 (emphasis added). If the majority is correct, then it necessarily follows that the post-conviction court, presided over by an experienced and respected trial judge, numerous panels of this court and our supreme court itself must be similarly ineffective because each of these entities has declined to require such instructions.

Sharkey was tried and convicted in 1988. *Sills* was not expressly overruled until 1995. *Wright v. State*, 658 N.E.2d 563, 570 (Ind. 1995). Although in *Wright* our supreme court stated "it should have been apparent" that *Sills* was overruled by *Lynch v. State*, 571 N.E.2d 537 (Ind.1991), *Lynch* was not decided until 1991, three years after Sharkey's trial and conviction. In at least eleven decisions of the Indiana Supreme Court[3] and

*Mueller v. State*, 517 N.E.2d 788 (Ind.1988); *Elmore v. State*, 515 N.E.2d 1388 (Ind.1987); *Majko v. State*, 503 N.E.2d 898 (Ind.1987); *Dorsey v. State*, 490 N.E.2d 260 (Ind.1986); and *Vincent v. State*, 489 N.E.2d 49 (1986).

four decisions of this court[4] which were decided after *Outlaw,* the continued validity of *Sills* was recognized; these decisions were expressly overruled by our supreme court in *Wright,* 658 N.E.2d at 570. In so doing, the supreme court did not cite its decision in *Outlaw* on which the majority today relies; nor did our supreme court mention its *Sills* decision in *Outlaw.* Moreover, in *Wright* itself, our supreme court reversed the decision of this court which was based upon *Sills. See Wright v. State,* 643 N.E.2d 417, 419 (Ind.Ct.App.1994).

In *Wright,* our supreme court wrote to resolve the "unfortunate confusion" that had arisen and to avoid "further confusion" and so that "any ambiguity and, hence, *Sills's* . . . vitality come to an end." 658 N.E.2d at 565, 566, 567. In the face of this confusion and ambiguity, trial counsel should not be held ineffective for failing to anticipate *Sills'* demise. *See Webb v. State,* 655 N.E.2d 1259, 1261 (Ind.Ct.App.1995) ("[C]ounsel is not required to prophesy future court rulings and act in accordance with them.") I would affirm the post conviction court in all respects.

---

**4.** *See Robertson v. State,* 650 N.E.2d 1177 (Ind. Ct.App.1995), *trans. denied; Whitt v. State,* 645 N.E.2d 677 (Ind.Ct.App.1995); *Johnson v. State,* 553 N.E.2d 187 (Ind.Ct.App.1990); and *Crawford v. State,* 502 N.E.2d 1361 (Ind.Ct.App.1987) *trans. denied.*