**Darryl Eugene FISHER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A03–0207–PC–241.**

Court of Appeals of Indiana.

March 24, 2003.

Michael N. Pagano, Funk & Foster, Hammond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Darryl Eugene Fisher appeals the post-conviction court's denial of his petition for post-conviction relief. The post-conviction court determined that Fisher's appellate counsel was not ineffective for failing to argue that Fisher should have received a reckless-homicide instruction at trial. Fisher contends that the post-conviction court improperly based its decision on an issue conceded by the State, that is, whether there was a serious evidentiary dispute over Fisher's mens rea at the time of the shooting. Concluding that the caselaw did not clearly permit—let alone require—an instruction on reckless homicide under the circumstances of Fisher's trial, we affirm.

### FACTS

On August 2, 1993, Fisher met with friends for a party at a restaurant in Gary, Indiana. Sometime around 11:00 p.m., three teenagers, Kizmond Alexander, Enoch Boyd, and La 'Montrell Thomas went to the restaurant to eat. The restaurant's main dining area is separated by doors from the lobby. Noticing a party in the main dining area, the three remained in the lobby and tried to attract the attention of a waiter to order their food for carry out.

Fisher left the party in the main dining area and went to the lobby. According to Thomas, a State's witness at trial, Fisher asked the three what they wanted. They replied that they were ordering food, so Fisher returned to the party. Fisher emerged from the main dining area a second time, this time holding a beer. A conversation between Fisher and Alexander ensued, whereupon Fisher pulled a handgun from his pants. At some point the gun discharged killing Alexander.

The State charged Fisher only with murder; no lesser-included offenses were included in the charging information. The State characterized the shooting as retaliation against Alexander for smiling at Fisher in the lobby. The defense, on the other hand, characterized the shooting as an accident or the result of reckless grandstanding. As a result, the trial focused solely on the issue of Fisher's intent.

The accounts of the altercation between Fisher and Alexander varied. Thomas, a State's witness, testified that Fisher and Alexander made eye contact, and he described the interaction as having a "conflict." Appellant's App. p. 162. According to Thomas, Alexander told Fisher not to throw beer on him, to which Fisher replied that he was not throwing beer but slinging lead. A state's witness also testified that Fisher began poking Alexander in the back with the handgun at some point before the handgun discharged.

At trial, Fisher denied ever threatening to sling lead and denied poking Alexander in the back with the gun. Fisher further testified that the man who sold him the handgun warned him that the gun had a faulty firing pin. When Alexander was

"revving up to run," according to Fisher, Alexander jumped back into the gun and the gun fired without Fisher pulling the trigger. Appellant's App. p. 173. In response to being asked why he had pulled out the gun in the first place, Fisher answered, "Well, I really had no reason to take it out. It was just that it was an act of playing, and a gun went off." Appellant's App. p. 176. Fisher also testified that he had consumed nine beers before the altercation.

Witnesses for the State supported Fisher's portrayal of the shooting in some respects. Boyd testified that Fisher held a beer in one hand throughout the incident. Appellant's App. pp. 148, 152. Boyd also testified that Fisher's gun was not pointed straight at Alexander's back but was "at a slant." Appellant's App. p. 150. Moreover, Thomas testified that he was not afraid of Fisher and that Fisher had pulled a gun on him once before in manner indicating that he was "playing around." Appellant's App. p. 169. Thomas did not believe Fisher was serious about shooting anyone so, when Fisher pointed the handgun at Alexander, Thomas turned and read the menu posted on the wall. Appellant's App. p. 164.

Likewise, testimony on Fisher's reaction to the shooting would support Fisher's contention that he did not knowingly or intentionally kill Alexander. First, Boyd described Fisher's reaction after the shooting as "running around crying with the gun in his hand." Appellant's App. p. 153. Second, Thomas testified that after the shooting, Fisher said, "My fault, Kizmond," and that Fisher "said it like he was stunned." Appellant's App. p. 164. Moreover, Fisher testified that, after the shooting, he tried to get an ambulance for Alexander and called 911.

At the close of evidence, defense counsel requested that the trial court instruct the jury on reckless homicide. This colloquy followed:

[Judge Letsinger]: Reckless homicide. Two prong test for including offense is that first he must be charged with having done the prohibited conduct, and it must be supported by—there must be a substantial question involved by the hearing of evidence, right?

[Defense Counsel]: Correct.

[Judge Letsinger]: We've heard evidence about how the Defendant considers his conduct to be reckless, but was he ever charged with that?

[Defense Counsel]: No, the prosecutor's office saw fit to charge him with murder.

[Judge Letsinger]: And recklessly has not been included as a factual allegation. His conduct is not charged as reckless. It's charged as either knowing or intentional. And therefore if I included this as an included offense, he could possibly face conviction for something that has not been charged. For that reason, it's denied. I'm giving the accident instruction although it's not the one tendered, it's a different one. Have you read the accident instruction?

Appellant's App. pp. 185–86. Although an accident instruction was presented to the jury, the instruction required in part that "[t]he act resulting in injury or death must not have been an unlawful act, such as a battery or carrying a handgun without a license." Appellant's App. p. 42. There is no dispute that Fisher was carrying the handgun without a license at the time of the shooting. The jury convicted Fisher of murder.

On Fisher's direct appeal, the issue of the refused instruction for reckless homicide was not raised. Instead, appellate

counsel argued that: (1) testimony that Fisher had previously fired a gun at one of the State's witnesses was improperly admitted; (2) the trial court improperly instructed the jury on accident; and (3) the evidence was insufficient to convict Fisher of murder. In an unpublished memorandum decision, this court upheld Fisher's conviction. *Fisher v. State*, No. 45A04–9405–CR–188, 651 N.E.2d 356 (Ind.Ct.App. June 20, 1995).

On May 16, 2001, Fisher filed a petition for post-conviction relief. He argued in part that his appellate counsel had been ineffective for failing to raise the issue of the refused reckless-homicide instruction. At a hearing on the post-conviction petition, the State conceded that, had Fisher's trial occurred that day, "there would be error in not giving the instruction, if [the instruction] was a correct statement of the law." Appellant's App. p. 201. The dispute hinged on whether, *at the time of Fisher's trial*, reckless homicide was an inherently lesser-included offense of murder. The post-conviction court agreed with Fisher that the caselaw existing at the time of Fisher's trial considered reckless homicide as "an inherently included lesser offense of murder." Appellant's App. p. 131. However, the post-conviction court determined that the jury, given the evidence presented at Fisher's trial, could not have determined that Fisher committed the lesser offense of reckless homicide but not the greater offense of murder. Appellant's App. p. 132. Fisher now appeals the denial of his petition for post-conviction relief.

## DISCUSSION AND DECISION

### I. Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–

Conviction Rule 1(5); *Saylor v. State*, 765 N.E.2d 535, 547 (Ind.2002). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Saylor*, 765 N.E.2d at 547. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). " 'A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." ' *Id.* (quoting *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000)). Although we accept findings of fact unless they are clearly erroneous, we give conclusions of law no deference. *Coleman v. State*, 741 N.E.2d 697, 700 (Ind. 2000), *cert. denied*, 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001).

### II. Fisher's Claim

Fisher contends that the post-conviction court erred in resolving his petition on an issue conceded by the State at the post-conviction hearing. In essence, the post-conviction court acknowledged that at the time of Fisher's trial the law clearly stated reckless homicide was an inherently lesser-included offense of murder. At the hearing it was the State's position that the caselaw at the time did not clearly require an instruction, and, therefore, appellate counsel was not deficient for failing to raise the issue. Both parties agreed that if the law on reckless-homicide instructions was clear at the time of Fisher's trial, the instruction should have been given because a serious evidentiary dispute existed re-

garding Fisher's intent. Yet, the post-conviction court found there was no serious evidentiary dispute, and, therefore, appellate counsel did not render deficient performance in failing to raise the issue of an improperly refused jury instruction.

### A. Elements of Claim for Appellate Counsel Ineffectiveness

We review claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth[1] and Fourteenth[2] Amendments, *see id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Claims of ineffective assistance of appellate counsel are reviewed using the same standard applicable to claims of trial counsel ineffectiveness. *Taylor v. State*, 717 N.E.2d 90, 94 (Ind.1999). These claims generally fall into three categories: (1) denying access to the appeal, (2) waiver of issues, and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193–95 (Ind.1997). Ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal. *Taylor v. State*, 717 N.E.2d at 94. The decision of what issue or issues to raise on appeal is one of the most important strategic decisions made by appellate counsel. *Bieghler*, 690 N.E.2d at 193. " 'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.' " *Id.* at 193–94 (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Appellate counsel will not be found to have rendered deficient performance in failing to raise a claim of error if its availability was not clear at the time of the appeal. *See Timberlake v. State*, 753 N.E.2d 591, 605 (Ind.2001) (concluding there was no deficient performance where law was unclear at the time of direct appeal whether particular claim would have been waived if not raised on direct appeal), *cert. denied*, —— U.S. ——, 123 S.Ct. 162,

---

1. The actual text of the Sixth Amendment provides:

   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI.

2. The actual text of the Fourteenth Amendment provides in part:

   No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

154 L.Ed.2d 61 (2002); *cf. Trueblood v. State,* 715 N.E.2d 1242, 1258 (Ind.1999) ("[A]ppellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law.").[3]

### B. Clarity of Law at the Time of Fisher's Direct Appeal

■ At the time of Fisher's direct appeal, the law was unclear whether reckless homicide was an inherently lesser-included offense of murder that permitted a separate instruction at trial. First, this court expressly held, three weeks before Fisher's appellate counsel filed his appellant's brief, that a defendant could only be convicted of a lesser-included offense of the greater offense charged "if the information actually charged all the elements of the lesser offense." *Wright v. State,* 643 N.E.2d 417, 419 (Ind.Ct.App.1994) (reversing conviction for reckless homicide because the State charged Wright with murder not reckless homicide), *vacated,* 658 N.E.2d 563 (Ind.1995). The court of appeals explained, "When a prosecutor charges the greater offense in language closely tracking the statutory definition of that offense and the prosecutor does not insert additional language showing an intent to charge any lesser offenses, the information must be held to charge only the greater offense." *Id.* Second, the state of the law clearly requiring instructions for inherently lesser-included offenses was not

settled until after Fisher's direct appeal had been decided. In overturning this court's decision in *Wright,* our supreme court repeatedly stated that the law governing instructions on lesser-included offenses was confusing and "thrived on ambiguity." *Wright v. State,* 658 N.E.2d 563, 565, 566, 570 (Ind.1995). To set the matter straight, our supreme court expressed its purpose: "We write to resolve the unfortunate confusion that has arisen in the cases that address when a trial court should instruct juries on lesser included offenses." *Id.* at 565. The court later noted:

> Clear notice serves the dual purposes of allowing an accused to prepare his defense and of protecting him from being placed twice in jeopardy for the same offense. When, therefore, the issue is under what circumstances a trial court should instruct a jury on a lesser included offense of that charged, *it is essential that the appellate courts of this state speak with one voice.* What we say will determine both how prosecutors draft indictments and informations and what notice defendants in criminal cases will have of the charges brought against them. *Due process will brook no confusion on the subject.*

*Id.* (emphases added). Our supreme court instituted a three-step approach "to elimi-

---

**3.** We are forced to disagree with a decision rendered by another panel of this court: *Sharkey v. State,* 672 N.E.2d 937 (Ind.Ct.App. 1996), *trans. denied.* The State prosecuted Sharkey for murder in 1988. On appeal, the *Sharkey* court concluded that if trial counsel had requested instructions for involuntary manslaughter or reckless homicide, "the trial court could have determined" under 1985 and 1986 caselaw that "it was required to give the instructions." *Id.* (citing *Outlaw v. State,* 484 N.E.2d 10 (Ind.1985), and *Roland v. State,* 501 N.E.2d 1034 (Ind.1986)). Unlike the panel that decided *Sharkey,* we believe the

issue is whether the law clearly permitted such an instruction, not whether some precedent would have supported an instruction. This court in *Wright v. State,* held in 1994 that such lesser-included-offense instructions were not even permitted. 643 N.E.2d 417, 419 (Ind.Ct.App.1994), *vacated,* 658 N.E.2d 563 (Ind.1995). While in 1994 appellate counsel may have prophesied that conditions were ripe for a distinct settling of the law, failure to foresee our Supreme Court's pronouncement in *Wright* is not deficient performance. *See infra* Part II.B.

nate any confusion that may have been caused" by earlier caselaw. *Id.* at 567. In dispelling the confusion, our supreme court overruled sixteen of its own cases to any extent that those cases suggested that a prosecutor could preclude instruction on a lesser-included offense by drafting an information to track only the greater offense. *Id.* at 570. Our supreme court handed down *Wright* almost one year after Fisher's appellate counsel filed his brief on direct appeal.

Had Fisher's trial been conducted after *Wright,* we agree that an instruction on reckless homicide would have been required. Yet, for the reasons given above, we cannot accept the post-conviction court's conclusion that the law clearly required giving an instruction of an inherently lesser-included offense at the time of the Fisher's direct appeal. Nor may we fault appellate counsel for choosing to raise issues that may have appeared at the time to serve Fisher's interests more effectively. *See Timberlake,* 753 N.E.2d at 605; *Bieghler,* 690 N.E.2d at 193. Fisher has failed to show that appellate counsel's performance was deficient. In conclusion, the evidence as a whole does not unerringly and unmistakably lead to a conclusion opposite that reached by the post-conviction court. *Saylor,* 765 N.E.2d at 547.

Judgment affirmed.

MATHIAS, J., concurs.

RILEY, J., concurring in result, with opinion.

Judge, RILEY, concurring in result.

I concur in result. I do not disagree with the reasoning of *Sharkey v. State,* 672 N.E.2d 937 (Ind.Ct.App.1996) as the majority opinion sets out in footnote 3, but would distinguish its holding. I agree with the Conclusions of Law made by the post-conviction court who also distinguished *Sharkey.*

The verdict in this case was entered on January 20, 1994. At that time, the court concluded that reckless homicide was a factually included offense of murder and followed the holding in *Sills v. State,* 463 N.E.2d 228 (Ind.1984), where the court held that the State could preclude instructions on lesser included offenses by drafting the charge so that it tracked the statute. That case was not expressly overruled until 1995 in *Wright v. State,* 643 N.E.2d 417 (Ind.Ct.App.1994) even though *Roland v. State,* 501 N.E.2d 1034 (Ind.1986), and *Outlaw v. State,* 484 N.E.2d 10 (Ind.1985), both contradicted *Sills.* Therefore, pursuant to the two-prong analysis in *Roland v. State,* only if a serious evidentiary dispute existed between the lesser and greater offenses, would it be fundamental error to refuse to instruct on an inherently or factually included lesser offense.

In *Sharkey,* the issue was whether he intended to kill his victim. Therefore, the jury had to determine whether the lesser included offense of reckless homicide had been committed but not the greater offense of *intentional* murder. In this case, the specific issue before the post-conviction court is whether the lesser included offense of reckless homicide was committed, but not the greater offense of a *knowing* killing. The post-conviction court makes eight findings that show the jury could not have come to such a conclusion:

1. Fisher had served in the military and therein been trained in the use of firearms.

2. Fisher brought the handgun to the restaurant that night.

3. Fisher knew the handgun was loaded.

4. He placed the handgun in a position of easy access.

5. He drew the handgun and pointed it at the victim stating that he was not throwing beer but slinging lead.

6. The handgun was a semi-automatic. If functioning normally, the trigger must have been pulled to fire it; if on the other hand the pin was faulty, as Fisher contends, he knew that and based on his military training would appreciate the dangers of a malfunctional [sic] deadly weapon.

8.[sic] Fisher poked the victim in the back with the handgun.

9.[sic] Fisher fired the weapon at point blank range into the victim's back.

Appellant's App. pp. 132–37.

Therefore, I concur with the Findings of Fact and Conclusions of Law of the post-conviction court and find that it was not fundamental error for the court to refuse to instruct the jury on reckless homicide because there was not a serious evidentiary dispute.